[No. 41359.    En Banc.    May 13, 1971.]

THE STATE OF WASHINGTON, *Respondent*, v. CHICAGO, MIL-
WAUKEE, ST. PAUL & PACIFIC RAILROAD COMPANY,
*Appellant.*

*Warren H. Ploeger, James E. Nelson,* and *J. Fred Simpson,* for appellant.

*Philip H. Faris, Prosecuting Attorney,* for respondent.

*Slade Gorton, Attorney General, Theodore O. Torve* and *D. Douglas McRayde, Assistants,* amici curiae.

FINLEY, J.—The facts of the instant dispute arise from a modern day railroad "holdup," which, unlike historical counterparts, was perpetrated by "lawmen" rather than by "highwaymen."

In the late afternoon of August 4, 1968, the sheriff of Whitman County intercepted the crew of appellant Chicago, Milwaukee, St. Paul and Pacific Railroad Company's eastbound train No. 264 and required them to stop the train near Pandora, Washington. The train was ordered immobilized until appellant's crew acceded to the sheriff's demand, secured replacement locomotive units from Avery, Idaho, and the train then proceeded on its route some 7 hours later. Five days later, comparable events occurred near Squaw Canyon, Washington. Again, one of appellant's trains was ordered to a stop, and again, appellant was required to secure different locomotive units before its train was allowed to proceed.

The stopping of appellant's trains on both occasions was because of the state's belief that the appellant had failed to equip the locomotives in question with modern spark arresters as required by RCW 9.40.040. Thereafter, the appellant railroad was formally charged, tried and convicted of violating that statute. Prior to sentencing, the appellant moved for injunctive relief in the United States District Court and secured an order by that court restraining further action by the trial court. The restraining order was reviewed by a 3-judge district court, which has abstained from final disposition pending consideration and decision by our court. The trial court then entered sentence against the appellant, and this appeal followed.

RCW 9.40.040 provides:

Every person who shall operate or permit to be oper-

ated in dangerous proximity to any brush, grass or other inflammable material, any spark-emitting engine or boiler which is not equipped with a modern spark-arrester, in good condition, shall be guilty of a misdemeanor.

Appellant contends the above-quoted statute is constitutionally defective in two respects: First, that the statute, when applied to interstate commerce, is invalid under the commerce clause of the United States Constitution by virtue of certain federal laws enacted pursuant thereto which, appellant contends, have preempted the field of law regulating equipment on locomotives operated in interstate commerce. Specifically, appellant contends that the Federal Boiler Inspection Act, 45 U.S.C. §§ 22-34 preempts any state regulation relating to locomotive equipment. The pertinent portion of the legislation, 45 U.S.C. § 23, reads as follows:

It shall be unlawful for any carrier to use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender, *and all parts and appurtenances thereof* are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb, and unless said locomotive, its boiler, tender, *and all parts and appurtenances thereof* have been inspected from time to time in accordance with the provisions of sections 28-30 and 32 of this title and are able to withstand such test or tests as may be prescribed in the rules and regulations hereinafter provided for.

(Italics ours.)

The appellant reasons that the subject of locomotive parts and appurtenances is such that national uniformity of regulation is required. It further argues that the above-quoted statute, and particularly those portions emphasized, demonstrate a clear intent on the part of Congress to preempt the full field of regulation relating to locomotive equipment. Additionally, appellant contends that the United States Supreme Court has construed the Federal Boiler Inspection Act to preclude state legislation in the area. In *Napier v. Atlantic Coast Line R.R.*, 272 U.S. 605, 71 L. Ed. 432, 47 S. Ct. 207 (1926), the Supreme Court consid-

ered two state statutes—one requiring automatic doors on locomotive fire boxes, and another requiring curtains for locomotive cabs. Therein the Supreme Court stated, at pages 610-11:

> *Each device was prescribed by the State primarily to promote the health and comfort of engineers and firemen.* Each state requirement may be assumed to be a proper exercise of its police power, unless the measure violates the Commerce Clause. . . . The intention of Congress to exclude States from exerting their police power must be clearly manifested, *Reid* v. *Colorado*, 187 U. S. 137, 148; *Savage* v. *Jones*, 225 U. S. 501, 533. Does the legislation of Congress manifest the intention to occupy the entire field of regulating locomotive equipment?

(Italics ours.) The Supreme Court concluded, at page 613:

> We hold that state legislation is precluded, because the Boiler Inspection Act, as we construe it, was intended to occupy the field.

Respondent state contends, however, that it was not the intent of Congress to preempt the entire field relating to equipment on interstate locomotives. Rather, the respondent argues that the Boiler Inspection Act is designed to protect the *safety of persons* and does not have as its purpose the protection against *damage to property*. Further, respondent contends that the federal act preempts state action only where the Interstate Commerce Commission has implemented the act by promulgating regulations as to specific parts or appurtenances on locomotives used in interstate commerce. In support of this interpretation, respondent cites *Terminal R.R. Ass'n of St. Louis v. Brotherhood of R.R. Trainmen*, 318 U.S. 1, 87 L. Ed. 571, 63 S. Ct. 420 (1942), which involved a state statute regarding caboose cars. Therein, the Supreme Court stated, at page 4:

> Appellant claims that there had been Congressional occupation of the field by virtue of the Boiler Inspection Act, the Safety Appliance Act, and the Interstate Commerce Act. It is not contended, *nor do we understand, that these statutes, by themselves and unimplemented by any action of the Interstate Commerce Commission, lay*

*down any requirement that cabooses shall or shall not be used* on any of the runs in question. Nor is it contended that the Interstate Commerce Commission itself has sought to make any such requirement. *At least in the absence of such action these* Acts do not themselves preclude the state order, *Atlantic Coast Line* v. *Georgia,* 234 U. S. 280; cf. *Welch Co.* v. *New Hampshire,* 306 U. S. 79, and it is unnecessary to consider on this occasion and without the participation of the Interstate Commerce Commission what may be the extent of its power under these Acts. *If it should in the exercise of granted power determine whether appellant must provide cabooses, the State would be powerless to gainsay it.*

(Footnotes omitted. Italics ours.)

Thus, respondent argues that absence of federal regulations prescribing spark arresters is a recognition by the federal government that the Boiler Inspection Act is intended to foster the protection of personal safety rather than to regulate the prevention of property damage by interstate railroad carriers.

Upon careful review of the federal legislation and cases interpreting the Boiler Inspection Act, several factors convince us that this legislation does not preempt the state's power to enact RCW 9.40.040. First it is obvious that the power of the individual states to enact legislation governing spark arresters has never been expressly decided by the federal courts. It is equally apparent that state legislation in this area serves a *critical public purpose; i.e.,* the prevention or reduction of costly and destructive timber and brush fires along railroad rights-of-way caused by locomotive-emitted sparks. Indeed, evidence produced at trial indicates that, in recent years, railroads have been the number one cause of forest fires in this state; and further, that carbon exhaust caused fires constitute a significant percentage of all railroad caused fires.

■ It is undisputed, as a general statement, that states, in the exercise of their police power, may prescribe regulations applicable to interstate commerce for the protection of their citizens' property against dangers arising from such interstate commerce, to the extent that those regula-

tions do not conflict with federal legislation and do not impose a substantial burden upon interstate commerce. 15 Am. Jur. 2d *Commerce* § 18 (1964).

We must conclude that, absent promulgation of federal administrative regulations relating to spark arresters, the Boiler Inspection Act does not preempt the power of individual states to require such devices. This conclusion is supported by section 205 of the Federal Railroad Safety Act of 1970, Pub. L. No. 91-458 (Oct. 16, 1970), which provides:

> The Congress declares that laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary [of Transportation] *has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement.* A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety *when necessary to eliminate or reduce an essentially local safety hazard,* and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce.

(Italics ours.)

The danger of fires along railroad rights-of-way may clearly be characterized as "an essentially local safety hazard." Absent positive federal regulation regarding this hazard, we conclude that it is the intent of Congress that the various states shall retain the power to regulate against the hazard—absent, of course, undue burden upon interstate commerce. Such a conclusion is supported by pragmatic logic. Were we to hold otherwise, the state would be left with an untenable void—without the protection of federal regulations, yet, at the same time, prevented from enacting regulations of its own for the protection of the property of its citizens against an obvious and serious hazard.

Although the appellant has not strenuously urged that RCW 9.40.040 constitutes an undue burden on interstate commerce, we are, nevertheless, constrained to com-

ment upon this argument in light of general limitations upon the state's police power vis-a-vis interstate commerce, and in light of the requirements of the 1970 Federal Railroad Safety Act. The record indicates that spark arresters have been utilized by railroads throughout the country for many years, and that at least one major railroad in this state has adopted approved spark arresters. Appellant has offered no proof to indicate that spark arresters acceptable to the state of Washington would fail to satisfy requirements of any other jurisdiction. In short, it would appear that the requirement of spark arresters imposes no significant burden upon the appellant; and, in fact, such devices are beneficial to the appellant specifically, which shares the state's vital interest in the prevention of locomotive spark emission fires. Even if we were to assume that the regulation imposes some burden on interstate commerce, this would not necessarily invalidate the state's action. *See Huron Portland Cement Co. v. Detroit,* 362 U.S. 440, 4 L. Ed. 2d 852, 80 S. Ct. 813 (1960). If a burden is shown, the primary inquiry is directed to the *importance* of the state regulation as measured against the national interest in keeping interstate commerce free from interferences which seriously impede it. *Bibb v. Navajo Freight Lines, Inc.,* 359 U.S. 520, 3 L. Ed. 2d 1003, 79 S. Ct. 962 (1959). We are convinced that the importance of RCW 9.40.040 is sufficient to outweigh a slight burden, if, in fact, there is any, which the statute might impose upon interstate commerce.

Appellant's second contention is that RCW 9.40.040 is unconstitutional because of vagueness. It argues that a criminal statute must be explicit enough in language to inform those subject to it what conduct on their part will render them liable to its penalties. *See, e.g., State v. Primeau,* 70 Wn.2d 109, 422 P.2d 302 (1966). In *Primeau* this court stated, at page 112:

> [I]f the wording apprises a person of common understanding of the conduct sought to be proscribed, then it is not too vague or indefinite to meet the constitutional tests.

We are persuaded that the questioned statute meets the above-stated criteria. The record indicates that this state, as well as other states, the United States Forest Service, forest protection agencies, and fire protection districts, have all adopted specific recommendations regarding the use of retention type spark arresters—as opposed to attrition type spark arresters which were used by the appellant. The State of Washington has given approval to three different models of spark arresters—all of the retention type—and there is general unanimity among experts that such arresters are effective and produce no adverse effects upon locomotives so equipped.

We are convinced that RCW 9.40.040 is a constitutionally valid exercise of the state's police power for the protection of its citizens' property against a danger of interstate commerce. The fundamental and paramount interests of this state—in protecting property against the severe dangers of locomotive spark emission fires—is clear. The statute is precluded neither by preemptive federal legislation nor by virtue of producing an undue burden upon interstate commerce.

For these reasons, the decision of the trial court is affirmed.

HAMILTON, C.J., ROSELLINI, HUNTER, HALE, NEILL, McGOVERN, STAFFORD, and WRIGHT, JJ., concur.