453 F.Supp. 920 (1977)
The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY et al., Plaintiffs,
v.
ILLINOIS COMMERCE COMMISSION et al., Defendants.
No. 74 C 2334.
United States District Court, N. D. Illinois, E. D.
September 28, 1977.
*921 Gary L. Crosby, Chicago, Ill., John H. Gobel, Baltimore, Md., James P. Daley, James H. Durkin, Edward R. Gustafson, Carl J. Frank, R. F. Koproske, Chester J. Maciorwski, Patrick F. Healy, Jr., Phillip B. Bowman, Gorham, Metge, Bowman & Hourigan, James E. Sykes, Dean M. Trafelet, Chicago, Ill., for plaintiffs.
William R. Nusbaum and Sumner J. Katz (NARUC), Washington, D. C., for intervening defendant NARUC.
Edward G. Finnegan, Chicago, Ill., for intervening defendant Thomas J. Duggan.
Jenner & Block, Chicago, Ill., for intervening plaintiff Fertilizer Institute.
William J. Scott, Atty. Gen., James R. Sullivan, Chicago, Ill., for defendants.

*922 MEMORANDUM OPINION AND ORDER
DECKER, District Judge.
This is an action brought by twenty-three railroads operating in Illinois to enjoin enforcement of regulations issued by the defendant Illinois Commerce Commission ("Commission") which govern the handling of certain tank cars (designated DOT 112A and 114A) carrying hazardous materials. Plaintiffs have charged that the Illinois regulations were issued without due process, that they are preempted by existing federal regulation, and that they would impose an undue burden on interstate commerce. Intervening plaintiffs are The Fertilizer Institute and the United States, and intervening defendants are John W. McGinness, Illinois Legislative Director for United Transportation Union, and the National Association of Regulatory Utility Commissioners ("NARUC").
Suit was filed on August 16, 1974, in response to an interim order issued by the Commission on August 4, 1974. A temporary restraining order was issued on August 16th, and this was later extended until determination of the underlying request for a permanent injunction. (Order, October 21, 1974). A three-judge court was designated on October 22, 1974. After protracted additional hearings, the Commission entered its final General Order 200 on July 7, 1976, reaffirmed on January 5, 1977:
"HAZARDOUS MATERIALS REGULATIONS

"DOT specification tank cars 112A and 114A, that are not equipped with head shields, transporting hazardous materials requiring placards pursuant to 49 CFR, Part 172, Subpart F  Placarding, shall not be cut off in motion. No car, moving under its own momentum, shall be allowed to strike such tank car, nor shall any such tank car be coupled into with more force than is necessary to complete the coupling."
Plaintiffs have moved to remand their federal preemption claim to this court sitting as a single judge, and for summary judgment on that claim. Defendant Commission and intervenor John W. McGinness have requested the court to abstain from any decision at this time.

A. Remand to this Court Alone
After consultation with the other two members of the three-judge panel, plaintiffs' motion to remand the preemption issue is granted. Although ultimately based on the Supremacy Clause, preemption is essentially a matter of statutory interpretation, and the Supreme Court has held that it is properly decided by a single judge. Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965).

B. Abstention
Defendant Commission and intervenor McGinness have urged that the court abstain from deciding this motion in view of the fact that an action to review the Commission's General Order 200 was filed by the railroads on February 2, 1977, and is now pending before the Circuit Court of Cook County.
These defendants rely on Alabama Public Service Commission v. Southern R. Co., 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951), which held that federal courts should abstain from enjoining state administrative action where an adequate state court review is available. Yet regardless of whether this case would be governed by Alabama Public Service Commission as an initial matter, it has now been pending for over three years, and abstention at this point would cause further delay and expenditure by the courts and parties involved. It is within the power of a federal court to decline abstention in order to avoid needless waste and delay. Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964).
Accordingly, this court will not abstain from deciding the preemption issue in this case.

C. Preemption
The court is thus presented with the question of whether the Commission is precluded *923 from issuing General Order 200 by existing federal regulation. The plaintiffs argue that the handling of hazardous materials has been covered by (1) regulations recently reissued by the Materials Transportation Bureau at 49 C.F.R. 170-179; (2) Emergency Order # 5, entered by the Federal Railroad Administration at 39 Fed.Reg. 38230 (October 30, 1974);[1] (3) the express preemption provisions of the Railroad Safety Act of 1970;[2] (4) the Hazardous Materials Transportation Act of 1974;[3] and (5) the general principles of federal supremacy.[4]
The federal regulations classify more than 1,500 hazardous materials, and prescribe in detail the proper packaging, labeling, loading and handling of shipments by rail and other means of transport. The regulations specify that particular shipments placarded "poison gas" or "explosives A" must not be cut off in motion or coupled with excessive force, i. e., must be shoved to rest. Emergency Order # 5 requires the same treatment for cars carrying flammable compressed gas.
According to the uncontroverted affidavit of Robert M. Graziano, Director of the Bureau of Explosives, American Association of Railroads, the effect of Illinois General Order 200 would be to require 130 additional commodities to be shoved to rest. This means that fully 130 more types of shipment would have to be shoved to rest by an engine, and could not be switched by "humping" or be moved separately under their own momentum. Additional problems would be generated by the difficulty of identifying which cars were subject to General Order 200 requirements.
Unexplainably, the defendant Commission has not seen fit even to respond to the preemption issue now before the court. The Commission argues that the court should abstain, and leaves all argument on the merits to the intervening defendant NARUC. NARUC contends that General Order 200 merely supplements, and does not conflict with, the federal regulations, and that it is directed against a local safety hazard. NARUC admits, as it must, that the Illinois regulations are more stringent and restrictive than the federal scheme.
The preemption issue in this case has been unduly complicated by the fact that the two statutes by which the Secretary is empowered to issue orders and regulations concerning hazardous materials[5] contain different standards for preemption of state regulation:
(1) Federal Railroad Safety Act of 1970
"§ 434. National uniformity of laws, rules, regulations, orders, and standards relating to railroad safety; State regulation
"The Congress declares that laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force any law, rule, regulation, order, or standard *924 relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement. A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce." (Emphasis added.) 45 U.S.C. § 434.
(2) Hazardous Materials Transportation Act of 1974
"§ 1811. Relationship to other laws
"(a) Except as provided in subsection (b) of this section, any requirement, of a State or political subdivision thereof, which is inconsistent with any requirement set forth in this chapter, or in a regulation issued under this chapter, is preempted.
"(b) Any requirement, of a State or political subdivision thereof, which is not consistent with any requirement set forth in this chapter, or in a regulation issued under this chapter, is not preempted if, upon the application of an appropriate State agency, the Secretary determines, in accordance with procedures to be prescribed by regulation, that such requirement (1) affords an equal or greater level of protection to the public than is afforded by the requirements of this chapter or of regulations issued under this chapter and (2) does not unreasonably burden commerce. Such requirement shall not be preempted to the extent specified in such determination by the Secretary for so long as such State or political subdivision thereof continues to administer and enforce effectively such requirement." (Emphasis added.) 49 U.S.C. § 1811.
The arguments are further complicated by the fact that although both statutes grant authority to regulate the transportation of hazardous materials, the Secretary has delegated authority under the Federal Railroad Safety Act to the Federal Railroad Administrator, and authority under the Hazardous Materials Transportation Act to the Materials Transportation Bureau.[6] Thus, while most of the regulations relevant to this case were issued under the Hazardous Materials Act, Emergency Order # 5 was issued under the Railroad Safety Act. This has led to much discussion of the relevance and meaning of the two preemption standards quoted above. In addition, there is little guidance from other courts relating to these relatively new provisions.
However, these statutes do not require the overly technical interpretation which would subject orders and regulations issued by the Secretary under one law to a different preemption standard than those under another. The Railroad Safety Act of 1970 provides that state action is preempted when the Secretary has issued orders or regulations covering the field. This is not limited merely to those promulgated under that Act, but refers instead to any action taken by the Secretary. Thus, when deciding whether General Order 200 is preempted, the court must consider not only Emergency Order # 5, but also the extensive regulations at 49 C.F.R. 170-179, and the test must be whether these indicate that the Secretary has "covered" the area.
Any more narrow interpretation of the Railroad Safety Act would frustrate its stated purpose of establishing uniform national standards.[7] The House Report clearly articulates this purpose:
"[The railroad industry] has a truly interstate character calling for a uniform body of regulation and enforcement . . . In addition to the obvious areas of rolling stock and employees, such elements as operating rules, signal systems, power supply systems, and communication systems *925 of a single company normally cross numerous State lines. To subject a carrier to enforcement before a number of different State administrative and judicial systems in several areas of operation could well result in an undue burden on interstate commerce." (Emphasis added.) 1970 U.S.Code Cong. & Admin.News, 91st Cong., 2d Sess., pp. 4104, 4110-11.
Although the court has found no reported decision which addresses the precise problems raised by this case, those which have dealt with the Railroad Safety Act are uniform in their finding of Congressional intent to preempt most state regulation relating to railroad safety. Commenting on § 434, which is quoted above, the Third Circuit said, "We believe these statutory provisions evince, as the district court determined, a `total preemptive intent.'"[8] Similarly, the Fifth Circuit has noted, "The meaning of the Congressional declaration is clear. The ultimate goal of the Act is to establish nationally uniform control of railroad safety . . ."[9]
Taken together, then, Emergency Order # 5 and the regulations at 49 C.F.R. 170-179 do "cover" the subject addressed by General Order 200. The Secretary has mandated that, in addition to the normal construction, operating and placarding requirements, special handling is warranted when cars are carrying flammable compressed gas, poisonous gas, or Class A explosives. This is in contrast to the Illinois regulations which would add at least 130 additional items to this list. A Notice and Proposal of the Department of Transportation indicate that consideration was given to extending this special treatment to cars carrying all types of hazardous materials, but these proposals were withdrawn, and we must assume that the Secretary has thus far determined that no further regulation is necessary.[10] Moreover, even if the Secretary had made no determination as to the need for supplemental regulations, the Illinois Commission would still be preempted unless the state order qualifies under the exemption for local safety hazard regulations.[11] Where Congress has manifested its intent to preempt state regulation (or, as here, to permit only specified exceptions), then even consistent, supplemental requirements are invalid. Campbell v. Hussey, 368 U.S. 297, 82 S.Ct. 327, 7 L.Ed.2d 299 (1961).
Indeed, the fact of federal preemption in this field has been recognized by the Illinois legislature:
"The Federal Railroad Safety Act of 1970 has preempted state laws covering railroad track safety standards." Ill.Rev. Stat. ch. 111 2/3 § 61e.
Although this particular provision refers only to track safety standards, there is no distinction between the effect of the Railroad Safety Act on state track safety standards and on hazardous materials standards. Thus, in enacting recent legislation dealing with the intrastate transportation of hazardous materials, the Illinois legislature specified:
"This Act does not authorize the Department . . . to require any placarding system or other standards for transportation of hazardous materials which is more stringent than any placarding system or standard required by the Federal law or regulations in situations where a federal placarding system exists." Ill. Rev.Stat. ch. 127 § 1253(d).
Thus, General Order 200 can stand only if it qualifies under the express exception for state regulations relating to essentially local safety hazards. This exception is explained in the House Report:
"The purpose of this latter provision is to enable the States to respond to local situations *926 not capable of being adequately encompassed within uniform national standards. The States will retain authority to regulate individual local problems where necessary to eliminate or reduce essentially local railroad safety hazards. Since these local hazards would not be Statewide in character, there is no intent to permit a State to establish Statewide standards superimposed on national standards covering the same subject matter." 1970 Code Cong. & Admin.News, 91st Cong., 2d Sess., p. 4117.
It is clear that General Order 200 does not fit within this narrow exception to federal uniformity. Although Illinois has suffered terrible accidents at Decatur and East St. Louis, the defendants have made no showing that the handling of tank cars carrying hazardous materials is not a subject capable of being regulated through uniform national standards. Similarly, the defendants have failed to show that the burden which this special Illinois rule would place on interstate commerce is in any way reasonable or necessary.
Defendants have directed the Court to State v. Chicago, Milwaukee, St. Paul & Pacific R. Co., 79 Wash.2d 288, 484 P.2d 1146, cert. denied, 404 U.S. 804, 92 S.Ct. 108, 30 L.Ed.2d 36 (1971), where the Supreme Court of Washington found that the state's regulation concerning fires alongside railroad tracks was not preempted by the Railroad Safety Act. However, in that case the Secretary had not issued any regulations on the subject, and although the Washington court discussed the local safety hazard exception, its decision must rest on the initial lack of federal action in the area. In contrast, here the Secretary has set requirements, and the only issue is whether this is an essentially local hazard. The clear legislative directive quoted above indicates the intended limits of this exception, and General Order 200, which is statewide, and addresses a hazard which is amenable to uniform national regulation, cannot meet this narrow provision.
Accordingly, this court finds that federal regulation has preempted the subject matter of General Order 200.
The defendants are hereby enjoined from the enforcement, operation, and execution of the General Order 200 regulations unless and until such time as the Commission has obtained an appropriate non-preemption determination issued by the Secretary of Transportation pursuant to 49 U.S.C. § 1811(b).
NOTES
[1] "Emergency Order # 5

"In addition to the requirements of Parts 170-189 of Title 49 of the Code of Federal Regulations governing the transportation of hazardous materials, . . . a railroad may transport flammable compressed gas in DOT 112A and DOT 114A uninsulated tank cars that are not equipped with head shields prescribed by the Hazardous Materials Regulations Board . . . only under the following conditions:
"(a) DOT specification tank cars 112A and 114A . . . transporting flammable compressed gas requiring dangerous placards, shall not be cut off in motion. No car moving under its own momentum shall be allowed to strike any DOT 112A or 114A tank car containing flammable compressed gas placarded dangerous, that is not equipped with head shields . . nor shall any such car be coupled into with more force than is necessary to complete the coupling."
. . . . .
[2] 45 U.S.C. §§ 421 et seq.
[3] 49 U.S.C. §§ 1801 et seq.
[4] See, e. g., Southern Ry. Co. v. Railroad Commission of Indiana, 236 U.S. 439, 35 S.Ct. 304, 59 L.Ed. 661 (1915).
[5] These are in addition to the Transportation of Explosives and Other Dangerous Articles Act of 1909, 18 U.S.C. §§ 831-835, the enforcement of which was transferred from the Interstate Commerce Commission to the Secretary of Transportation by the Department of Transportation Act of 1967, 49 U.S.C. § 1655.
[6] 49 C.F.R. §§ 1.49, 1.53.
[7] And this interpretation does not frustrate the goals of the Hazardous Materials Act. Although subpart (a) of § 1811 is redundant, the main import of that section is to establish the review procedures set forth in (b) and implemented through regulations issued at 41 Fed. Reg. 38167-38183 (Sept. 9, 1976).
[8] NARUC v. Coleman, 542 F.2d 11, 13 (3d Cir. 1976).
[9] Donelon v. New Orleans Terminal Co., 474 F.2d 1108, 1112 (5th Cir. 1973).
[10] 39 Fed.Reg. 29197 (August 14, 1974); 41 Fed.Reg. 16661 (April 21, 1976).
[11] Or unless it has been approved by the Secretary subsequent to the provisions of the Hazardous Materials Transportation Act. There is no indication that the Commission has applied for such approval.