UNION PACIFIC RAILROAD, Appellee,

v.

Acting Commissioner of Labor, Walter M. JOHNSON and Occupational Safety and Health Review Commission, Appellants.

No. 59999.

Supreme Court of Iowa.

April 19, 1978.

Richard C. Turner, Atty. Gen., Thomas D. McGrane, Asst. Atty. Gen., and Lyle Rodenburg, County Atty., for appellants.

Maynard S. Telpner, Council Bluffs and John J. Marchant, Omaha, Neb., for appellee.

Lawrence M. Mann, of Alper, Schoene, Horkan & Mann, Washington, D. C., for amicus curiae, AFL–CIO and United Transp. Union.

Considered by MOORE, C. J., and REES, UHLENHOPP, HARRIS and McCORMICK, JJ.

MOORE, Chief Justice.

The Commissioner of Labor and the Iowa Occupational Safety and Health Review Commission (IOSHRC) appeal from trial court order granting summary judgment for Union Pacific Railroad which overturned a final order of IOSHRC and dismissed citations and attendant fines issued by the Iowa Bureau of Labor. Trial court ruled that Iowa Bureau of Labor Rule 1910.5(b) precluded IOSHRC officials from enforcing OSHA standards in the railroad repair shops and yards of Union Pacific

because the Federal Railroad Safety Act, 45 U.S.C. § 421, et seq., vested plenary power to regulate railroad safety standards in the United States Secretary of Transportation. We reverse the trial court.

The facts are undisputed. The petitioner-appellee, Union Pacific, operates an interstate common carrier railroad system which includes a facility for diesel locomotive service and repair and railroad car repair in Council Bluffs, Iowa. On August 9, 1972 an Iowa Occupational Safety and Health Act (IOSHA) compliance officer made a routine inspection of the facility pursuant to chapter 88, Code of Iowa. As a result of the inspection, the Commissioner of Labor, on September 19, 1972, issued citations to petitioner for numerous violations of Iowa Bureau of Labor Rules which had been adopted under the authority of IOSHA and proposed certain penalties. The citations involved only working conditions in the "yards" and did not extend to any working conditions including the rolling stock, track work, or anything having to do with the actual operations of the railroad regarding train movement.

Union Pacific filed a Notice of Contest to the citations with the IOSHA Review Commission on May 30, 1973 and the Commissioner filed a complaint with the same body on June 25, 1973. The railroad argued before the Review Commission that the citations and resulting complaint should be dismissed because the Commissioner had no authority or jurisdiction to issue the citation by virtue of Bureau of Labor Rule 1910.5(b) because the Federal Railroad Administration was then exercising jurisdiction over such operations under 45 U.S.C. § 421, et seq., The Federal Railroad Safety Act. Additionally, the railroad contended the Commissioner had failed to timely file his complaint with the Review Commission as required by Rule 1.33(1) of the Review Commission's Rules of Procedure.

After hearing the Review Commission upheld the citations finding the violations had occurred, the filing of the complaint was within the rules and the Review Commission had power to enforce the IOSHA rules. Union Pacific was ordered to pay a penalty of $633. In its decision the Commission made the specific conclusion that Rule 1910.5(b) was invalid because the Commissioner of Labor had exceeded his authority in attempting to exclude from Iowa law a certain class of employers.

The railroad subsequently filed a Petition to Review and Set Aside the IOSHRC order in district court. The railroad again alleged the two grounds urged before the Review Commission. Additional allegations made were that the IOSHRC was incorrect as a matter of law because the Iowa Bureau of Labor had no power to apply the IOSHA standards to the railroad and that the Iowa Administrative Procedure Act (Ch. 17A, 1975 Code) was not complied with.

Both sides then moved for summary judgment noting there remained no genuine issue of material fact as the court was only required to review the case as presented before the Commission. On September 28, 1976 the district court filed its ruling denying the Commissioner's motion, granting Union Pacific's motion and vacating and setting aside the order of IOSHRC.

The court held the Review Commission's order was invalid because it was not in compliance with § 17A.12(4) of the Iowa Administrative Procedure Act. The court further stated that although Rule 1910.5(b) was a valid rule, by its operation it exempted Union Pacific from coverage under IOSHA because the United States Secretary of Transportation was then exercising jurisdiction over railroads under 45 U.S.C. § 421, et seq.

The Department of Labor and the Review Commission have appealed from the district court ruling.

I. The crux of this appeal is whether Union Pacific Railroad Company is exempt in the operation of its repair shops and yards from IOSHA because the Federal Railroad Administration has authority to prescribe and enforce health and safety standards pertaining to the railroad industry. Trial court held that Iowa Bureau of Labor rule 1910.5(b), 1973 I.D.R., Bureau of Labor Rules, chapter 10, precluded State

officials from enforcing IOSHA on Union Pacific. That rule provides:

"(b) None of the standards in this part shall apply to working conditions of employees with respect to which Federal agencies other than the Department of Labor, or State agencies acting under Section 274 of the Atomic Energy Act of 1954, as amended (42 U.S.C. 2021), exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety or health."

At the time the Iowa Bureau of Labor was seeking to regulate the appellee railroad, the Federal Railroad Safety Act of 1970 (FRA) was in effect. Section 205 (45 U.S.C. § 434) of that Act provides:

"§ 434. National uniformity of laws, rules, regulations, orders, and standards relating to railroad safety; State regulation

"The Congress declares that laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable. *A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement.* A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce." (Emphasis supplied.)

The United States Secretary of Transportation is specifically authorized to prescribe rules to effectuate the Act. Another provision of the Act provides in relevant part:

"§ 431. Promulgation of rules, regulations, orders, and standards—Authority of Secretary; collective bargaining agreements under Railway Labor Act as consistent with rules, etc.

"(a) The Secretary of Transportation (hereafter in this subchapter referred to as the 'Secretary') shall (1) prescribe, as necessary, appropriate rules, regulations, orders, and standards for all areas of railroad safety supplementing provisions of law and regulations in effect on October 16, 1970, and (2) conduct, as necessary, research, development, testing, evaluation, and training for all areas of railroad safety. * * *." 45 U.S.C. § 431.

The trial court held that the effect of this specific statute dealing with railroad safety was to exempt the railroad industry from any regulation by IOSHA even if the Secretary of Transportation had not adopted a set of standards covering that specific area of railroad safety (here the diesel locomotive servicing and repair facility and the railroad car repair facility).

Rule 1910.5(b) was modeled after section 4(b)(1) of Federal OSHA (29 U.S.C. § 653(b)(1)). The interplay between this section and the Federal Railroad Safety Act has been litigated before the Federal OSHA Review Commission and several circuit courts. Previously we held IOSHA should be interpreted similarly to OSHA under the principle federal interpretations are persuasive when a state statute is patterned after a federal statute. *Koll v. Manatt's Transp. Co.*, Iowa, 253 N.W.2d 265, 269, 270. Thus we turn to a discussion of Federal OSHA.

The declared purpose and policy of the Act is "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions." 29 U.S.C. § 651(b); *Lee Way Motor Freight, Inc. v. Secretary of Labor*, 10 Cir., 511 F.2d 864, 867. The Act is intended to prevent the first injury, including those of a non-serious nature. *Arkansas-Best Freight v. Occupational Safety, Etc.*, 8 Cir., 529 F.2d 649, 653; *Brennan v. Occupational Safety & Health Rev. Com'n*, 2 Cir., 513 F.2d 1032, 1039. The courts have spoken of the Federal Railway Safety Act in much the same manner. Clearly its purpose is to establish a nationally uniform system of regulation in the rail safety field. *Nat. Ass'n of Regu-*

*latory Util. Com'rs v. Coleman,* 3 Cir., 542 F.2d 11, 13. Since the goals of this statute are remedial in nature it too must be construed liberally to effectuate that purpose. *United States v. Missouri Pac. R. Co.,* 8 Cir., 553 F.2d 1156, 1158.

■ Against this background we may proceed to the Federal interpretations. The Federal OSHA Review Commission and federal appellate courts have uniformly rejected an *industry-wide exemption* as urged by appellee and held railroads are subject to OSHA jurisdiction except as to those specific issues covered by Department of Transportation regulations. Inchoate authority to regulate job safety in an agency which regulates other aspects of the employer is not enough to provide the exemption. For an excellent discussion of this problem see Connolly & Crowell, A Practical Guide to the Occupational Safety & Health Act: Law, Principles & Practices, Vol. 1, "Section 4(b)(1) Exemption," pages 6–16, (1977).

The leading case taking this view is *Southern Ry. Co. v. Occupational Saf. & H. Review Comm.,* 4 Cir., 539 F.2d 335, cert. denied, 429 U.S. 999, 97 S.Ct. 525, 50 L.Ed.2d 609. There the Fourth Circuit in 1976 held the section 4(b)(1) exemption applies only to those areas of railway employee safety in which the FRA has *expressly* exercised its authority. The court based its conclusion on the clear statutory language and also the legislative history. At page 338 of the opinion the court stated:

"OSHA was enacted in response to an appalling record of death and disability in our industrial environment, and it was the clear intendment of Congress to meet the problem with broad and, hopefully, effective legislation. The declared purpose of the Act was 'to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources.' 29 U.S.C. § 651(b). 'Since the statute does not, on its face, provide an answer to the specific question [before us] * * * reference to the statutory purpose behind the Act is especially necessary to arrive at an interpretation of

the statute consistent with the objectives Congress sought to achieve through this legislation.' Additionally, the scope of the Congressional objective requires that '[r]emedial social legislation * * * be construed liberally in favor of the workers whom it was designed to protect, and any exemption from its terms must be narrowly construed.' Accordingly, the exemptive statute should appropriately be construed to achieve the maximum protection for the industrial workers of the Nation.

"In our opinion the industry-wide exemption urged upon us by Southern would fly in the face of these principles and objectives. The safety regulations of the Department of Transportation are confined almost exclusively to those areas of the railway industry which affect over-the-road operations such as locomotives, rolling stock, signal installations, road beds and related facilities. While the regulatory program in these areas reflects a concern for the safety of the employees, it is directed primarily toward the general safety of transportation operations. On the other hand, the Department of Transportation and FRA do not purport to regulate the occupational health and safety aspects of railroad offices or shop and repair facilities. To read the exemptive statute in a manner which would leave thousands of workers in these nonoperational areas of the railway industry exposed to unregulated industrial hazards would, in our opinion, utterly frustrate the legislative purpose."

The Fifth Circuit shortly followed suit in rejecting both the position put forward by Union Pacific in this case as well as the conclusion of the trial court on the interrelationship of the two statutes. In *Southern Pac. Transp. Co. v. Usery,* 5 Cir., 539 F.2d 386, cert. denied, ―― U.S. ――, 98 S.Ct. 222, 54 L.Ed.2d 154, the court announced its support of the Fourth Circuit's position and stated at page 392:

"We are sympathetic to the railroads' argument that regulatory duplication is

undesirable because it makes it excessively difficult for the employer to know which standards he is required to obey and may create undue expense from successive compliance with different standards. But we think it clear that avoiding duplication was a secondary purpose of the OSHA/FRA scheme. OSHA was drafted in recognition of the possibility, since realized, that the FRA would fail to implement its authority before some OSHA regulations became effective. These unfortunate consequences, inherent in the nature of the beast, may be avoided or greatly minimized by a clear statement, in each instance of displacing regulation, of the FRA's position on these preexisting OSHA regulations which it seeks to oust."

Both the Fourth and Fifth Circuits took the further position that a proposed rule under the Administrative Procedure Act is not an exercise of authority by the Secretary of FRA so as to pre-empt OSHA jurisdiction; pre-emption only occurs where the rule is finalized and in effect. *Southern Ry. Co. v. Occupational Saf. & H. Review Comm.*, supra, 539 F.2d at 339, 340; *Southern Pac. Transp. Co. v. Usery*, supra, 539 F.2d 392, 393. In accord, see *Baltimore & O. R. Co. v. O. S. H. R. C.*, 179 U.S.App.D.C. 97, 100, 548 F.2d 1052, 1055 where the D.C. Circuit took a similar position, stating:

"We think the progression by FRA to the publication of an initial Notice of Proposed Rulemaking on July 15, 1976 is similarly lacking in force to terminate OSHA applicability. Preemption may, of course, eventually occur as to those areas covered by any regulations promulgated as a result of the proceeding, but we see no Congressional purpose in 4(b)(1) to treat a proposal to act as action itself.

"If the Federal Railroad Administration wishes, in the fullest reach of its statutory authority, to assume the dominant role in determining the health and safety aspects of the working conditions of railroad employees, Congress has

opened for it an avenue to that end. *But Congress did not contemplate that there would be no regulation whatever while the FRA is still considering what road to take, nor does a single step down that road carry preemption further than that step itself.*" (Emphasis supplied).

In addition to these circuit decisions the Federal OSHA Review Commission has consistently rejected the position urged by Union Pacific and adopted here by the trial court. Undoubtedly the leading case in this regard is Southern Pacific Transportation Company, OSAHRC Docket No. 1348, 1974–75 OSHD, ¶ 19, 054 (CCH), aff'd. sub nom., *Southern Pac. Transp. Co. v. Usery*, 5 Cir., 539 F.2d 386. Despite the clear position pronounced in that decision the railroad industry has unsuccessfully attempted to raise the identical issue in numerous subsequent cases. See Union Pacific Railroad Co., OSHRC Docket Nos. 13214, 13251, 13337, 1977–78 OSHD ¶ 22, 042 (CCH); Union Pacific Railroad Co., OSAHRC Docket Nos. 76–1182, 76–1531, 76–1652, 76–2011, 1977–78 OSHD ¶ 21, 979 (CCH); Central of Georgia Railroad, OSAHRC Docket No. 11742, 1977–78 OSHD ¶ 21, 688 (CCH); Indiana Harbor Belt Railroad Co., OSAHRC Docket No. 12420, 1976–77 OSHD ¶ 21, 473 (CCH); Penn Central Transportation Co., OSAHRC Docket No. 10111, 1976–77 OSHD ¶ 21, 138 (CCH); Norfolk and Western Railway Co., OSAHRC Docket No. 12215, 12216, 1976–77 OSHD ¶ 21, 238 (CCH); Burlington Northern Inc., OSAHRC Docket No. 13771, 1976–77 OSHD ¶ 21, 208 (CCH).

The trial court relied heavily on a 1975 Montana Federal District Court opinion which has not been followed by any court which has subsequently faced this problem. *Dunlop v. Burlington Northern Railroad*, D.Mont., 395 F.Supp. 203. However, even the *Dunlop* court declined to accept an industry-wide exception:

"The respondent urges the Court to conclude from the above that the entire railroad industry is exempt from the Occupational Safety and Health Act. With-

out ruling on the respondent's proposed conclusion, I note that the only question before the Court is whether the petitioner is entitled to an order of this Court allowing him to inspect respondent's workplaces * * *." 395 F.Supp. 204, 205.

What the court in *Dunlop* did hold was that where a proposed FRA rule exists, this pre-empts OSHA jurisdiction. In *Dunlop* a proposed rule (40 Fed.Reg. 10693 (March 1975) which arguably covered the railroad's work site) was in effect when the OSHA personnel attempted to assert their regulatory power. Therefore the court, in contrast with the position later taken by three circuits, held the statutory authority had been exercised under FRA to preclude OSHA.

■ Assuming, arguendo, we were to accept this position, it is no support for trial court's decision. The citations in the present case were issued on September 19, 1972. At that time the only exercise of FRA authority before the dates on which the cited violation occurred was a promulgation of regulations for specific items of railroad operating equipment (Track Safety Standards—49 C.F.R. § 213). Thus no rules existed relating to the railroad work sites under discussion here. The attempts of appellee to buttress its argument with a discussion of 1975 and 1976 proposed FRA rules completely ignores the time sequence which exists in this case. There was not even an arguable exercise of authority by the Federal Secretary of Transportation and thus IOSHA clearly applies.

At least three different state courts have followed the position uniformly adopted by OSHARC and the federal circuit courts. See *State By Malone v. Burlington Northern, Inc.*, Minn., 247 N.W.2d 54 (an almost identical case to the one presented here); *Bessemer & Lake Erie R. Co. v. Pennsylvania Pub. Co.*, 28 Pa.Cmwlth. 461, 368 A.2d 1305 (state statute re safety flags upheld); *State v. Chicago, Milwaukee, St. Paul & Pacific R. Co.*, 79 Wash.2d 288, 484 P.2d

1146, appeal dismissed, 404 U.S. 804, 92 S.Ct. 108, 30 L.Ed.2d 36 (state statute regulating spark arrestors upheld against preemption argument). Also see Southern Pacific Transportation Co., 1974–75 OSHD ¶ 19, 242 (CCH), aff'd., 1975–76 OSHD ¶ 20, 108 where the California OSHA Review Commission followed this line of reasoning. However, see *Fowinkle v. Southern Ry. Co.*, Tenn., 533 S.W.2d 728.

■ After reviewing the decisions of three federal circuit courts, the Federal OSHA Review Commission and several state courts, we conclude trial court erred in its interpretation of the statutory interplay of IOSHA and FRA. We reject Union Pacific's assertion that there is an "industry-wide" exemption carved out of IOSHA for the railroad industry. Additionally, we reject the contention that a rule proposed by the Federal Secretary of Transportation acts to pre-empt IOSHA coverage.

■ II. Our disposition of the substantive issue presented does not end our analysis. Union Pacific alleges that three procedural defects in the administrative proceeding require affirmance of trial court's order. The questions raised relate to administrative interpretation of statutes and rules promulgated thereunder. While we give weight to the Review Commission's conclusions in this regard, *Iowa Nat. Indus. Loan Co. v. Iowa State, Etc.*, Iowa, 224 N.W.2d 437, 440, the meaning to be given these statutes and rules is always a matter of law for ultimate determination by this court. *Hubbard v. State*, Iowa, 163 N.W.2d 904, 909; *Snook v. Herrmann*, Iowa, 161 N.W.2d 185, 187.

■ The railroad first contends that the decision of the Review Commission dated May 30, 1974 is invalid because it does not conform to the notice requirements of the Iowa Administrative Procedure Act, chapter 17A, 1975 Code. The IAPA became effective on July 1, 1975 and by its clear language is inapplicable to this case.

(§ 17A.23). The railroad's argument to the contrary is wholly unmeritorious.

■ In its next contention the railroad asserts the decision of the Review Commission was invalid because it incorrectly concluded that the adoption of Bureau of Labor Rule 1910.5(b) was beyond the scope of the Commissioner of Labor's authority under Code section 88.5(1)(c). Although the Commission did err in this regard it is well settled that if the Commission rendered a correct judgment we may still sustain the ultimate conclusion; a ruling which is proper on another ground, properly urged, should not be disturbed on appeal. *Hawkins/Korshoj v. State Bd. of Regents*, Iowa, 255 N.W.2d 124, 127 and citations. Because we sustain the IOSHRC's ruling on another ground, appellee is not entitled to relief here.

Finally, the Railroad contends as it did at all levels of these proceedings, that the citations it was issued were invalid because no compliant was filed with the Review Commission within 20 days after the receipt of respondent's notice of contest as required by rule 1.33(1) of the Commission's Rules of Procedure.

Rule 1.33(1) specifies:

"(A) The Commissioner of Labor shall file a complaint with the Commission no later than twenty days after his receipt of the notice of contest."

As appellee states in its brief and argument, it served notice of contest on complainant Commission on October 5, 1972. This complaint was not filed with the Commission until June 25, 1973, over eight months thereafter. However, this departure from the rule is not fatal for two reasons. First, the rule did not become effective until April 27, 1973. Thus it is questionable whether the rule applied at all; if it did, there was only approximately a one-month delay once the rule became operative.

■ Furthermore, dismissal for failure to file is discretionary, not mandatory, under Rule 1.108(88). There was no evidence to show surprise or prejudice to the railroad. Thus the Commission was correct in determining strict adherence to the rule was not required.

Based on the language of rule 1910.5(b), the federal, administrative and state cases which have discussed the interplay of OSHA and FRA, and the factual situation presented herein, we conclude the trial court erred in granting Union Pacific's motion for summary judgment. Therefore, this case is reversed for entry of summary judgment in favor of the Commissioner of Labor.

REVERSED AND REMANDED.