**MISSOURI PACIFIC RAILROAD COMPANY, et al., Plaintiffs–Appellees,**

v.

**RAILROAD COMMISSION OF TEXAS, et al., Defendants–Appellants.**

No. 87–1151.

United States Court of Appeals, Fifth Circuit.

Dec. 10, 1987.

Douglas Fraser, Jim Mattox, Atty. Gen., Austin, Tex., for defendants-appellants.

Lawrence M. Mann, Washington, D.C., J. Donald Bowen, Houston, Tex., for amicus Railway Labor Executives Ass'n.

Robert B. Burns, Jr., Karl G. Johnson, Wilson, Grosenheider & Burns, Austin, Tex., for all plaintiffs-appellees.

Michael A. Johnson, Hugh L. McCulley, Houston, Tex., for So. Pacific Trans. Co. & St. Louis–SW Railway Co.

Michael E. Roper, Dallas, Tex., for Missouri–Kansas–TX Railroad Co.

Scott R. Craig, Spring, Tex., for Missouri Pacific Railroad.

Before REAVLEY, POLITZ, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Several railroads sought declaratory and injunctive relief against the Railroad Commission of Texas ("State" or "Commission") alleging that certain railroad safety regulations recently promulgated by the Commission were preempted by regulations of the Federal Railroad Administration ("FRA"), enforcing the Federal Railroad Safety Act of 1970 ("FRSA"), 45 U.S. C. § 421 *et seq.*[1] The railroads alleged federal preemption and asserted *inter alia* that the Commission's regulations unduly burdened interstate commerce and deprived them of property without due process of law. The district court granted the railroads' motion for partial summary judgment, concluding that the State's safety equipment requirement, 16 T.A.C. 5.617, walkway requirement, 16 T.A.C. 5.619, and vegetation control provision, 16 T.A.C. 5.620(b), were each "specifically preempted by federal regulatory occupation of their subject matter." *Missouri Pacific R.R. Co. v. Railroad Comm'n of Texas*, 653 F.Supp. 617, 628 (W.D.Tex.1987). Alternatively, the district court concluded that the statewide character of *each* of the challenged regulations, 16 T.A.C. 5.616–5.620, indicated a failure to respond to "essentially local safety hazards" as required by 45 U.S.C. § 434. *Id.* at 627–28. The Commission appeals. We affirm in part, reverse in part, and remand.

## I.

The Supreme Court has delineated certain principles by which we determine the preemptive scope of federal legislation or regulations under the Supremacy Clause. We "start with the assumption that the historic police powers of the states were not to be superseded by the Federal Act

1. Specifically, the railroads challenged the Commission's adoption of Tex. R.R. Comm'n, 16 Tex.Admin.Code 5.616–5.620 (hereinafter cited as "16 T.A.C. ____"). The following are summaries of each provision:

 i) 5.616 requires railroads to file with the Commission copies of certain monthly reports filed with the FRA pursuant to 49 C.F.R. 228.19, copies of programs for periodic conduct of operational tests and inspections filed with the FRA pursuant to 49 C.F.R. 217.9, copies of programs for periodic instruction of employees filed with the FRA pursuant to 49 C.F.R. 217.11, and codes of operating rules, time tables, and time table special instructions;

 ii) 5.617 requires operable fire extinguishers and first aid kits on each caboose and locomotive;

 iii) 5.618 requires railroads to file with the Commission updated wayside detector maps, charts, or lists;

 iv) 5.619 requires smooth, maintained, properly sloped walkways which are level with the tops of the ties along both sides of all tracks within railyards and the tracks adjacent thereto, in an effort to provide safer working conditions for employees working on or around the tracks;

 v) 5.620 prohibits visual obstructions, including railroad equipment, signs, billboards, and excess vegetation, at public grade crossings.

unless that was the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). The first inquiry is "whether Congress explicitly or implicitly declared that the states are prohibited from regulating" precise areas to which state regulations apply. *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 158, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1978). However, "[e]ven if Congress has not completely foreclosed state legislation in a particular area, a state statute is void to the extent that it actually conflicts with a federal statute." *Id.* "The test of whether both federal and state regulations may operate, or the state regulation must give way, is whether both regulations can be enforced without impairing the superintendence of the field, not whether they are aimed at similar or different objectives." *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963). Finally, " 'where failure of ... federal officials affirmatively to exercise their full authority takes on the character of a ruling that no such [state] regulation is appropriate or approved pursuant to the policy of the statute,' states are not permitted to use their police power to enact such a regulation." *Ray*, 435 U.S. at 179, 98 S.Ct. at 1004–05. Although on reflection these guides are easier to state than to apply, by their compass we shall try to set our course.

Section 434 of the FRSA provides:

The Congress declares that laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force any law, rule, regulation, or standard relating to railroad safety until such time as the Secretary [of Transportation] has adopted a rule, regulation, order or standard covering the subject matter of such State requirement. A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce.

By its terms, § 434 mandates national railroad safety standards "to the extent practicable." State regulation may, however, be interposed (1) where no federal standard has yet been adopted "covering the subject matter" of the state regulation or (2) to eliminate or reduce "an essentially local safety hazard."[2]

Legislative history does not enlighten our interpretation of how or what FRA regulations "cover the subject matter" of rail safety to the exclusion of continued state efforts.[3] Because the Act specifically preserves a regulatory position for the states, we are reluctant to jump to the conclusion that the Act evinced a "total preemptive intent." Compare *National Ass'n of Regulatory Util. Comm'rs v. Coleman*, 542 F.2d 11, 13 (3d Cir.1976). Instead, we will attempt pragmatically to reconcile the scope of FRA regulations with the state regulations by considering whether in light of Congressional policy and FRA actions, a national rule, regulation, order or standard has been adopted "covering the subject matter" of the state regulations.

## II.

### A.

The Commission's walkway requirement poses the most difficult preemption issue.

**2.** On appeal, the Commission does not seek to justify the challenged regulations under the second alternative, and we shall therefore not discuss it.

**3.** Congress recognized that enactment of the FRSA would not instantaneously cover every safety hazard. *See* H.R.Rep. No. 1194, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.CODE CONG. & AD.NEWS 4104, 4109 [hereinafter cited as House Report]. Therefore, as the House Report indicates, "existing state requirements [would] remain in effect until preempted by federal action[,]" *id.* at 4108, and "[o]nce the [FRA] has prescribed a uniform national standard, the State would no longer have authority to establish statewide standards with respect to rail safety." *Id.* at 4116–17.

Section 5.619 defines a walkway as "a pathway located alongside a railroad track or railroad switch for the purpose of providing an area for a railroad employee to perform duties associated with that track." The required walkways are intended to provide a surface to support railroad employees working alongside railroad rolling equipment and track. The regulation establishes walkway surface, slope, and width specifications and requires walkways to be constructed along both sides of all tracks within rail yards.

Literally and figuratively, the walkways required by state regulations sit atop and adjoin the roadbed for which FRA has prescribed minimum specifications. The federal regulation governs roadbed, track geometry and track structure and specifically covers areas "adjacent to the roadbed" as well as track gauge, alignment, surface, ballast, drainage and component parts. 49 C.F.R. 213.31–213.143 (1986).

■ The Commission supports its regulation with a concededly appealing argument that FRA has not "covered the subject matter" of walkways because federal regulations do not mandate walkways. As the FRSA focuses on safety, whether or not a particular state regulation "covers the subject matter" of a federal regulation should be analyzed, according to the Commission, in terms of its precise safety concerns. This argument has found favor with several courts.[4] We reject this analysis as overly simplistic.

We have already observed that the Supreme Court in *Florida Lime & Avocado Growers, supra,* refused to resolve preemption issues by merely comparing the objectives of the federal and state regulations. If the purpose of the state regulation was alone controlling, a state could enact a walkway requirement or other safety regulation that hindered or prevented a railroad from complying simultaneously with an FRA regulation designed to enhance safety in a different area. Federal superintendence of the field would be thwarted by such a mincing construction of whether FRA regulations "cover the subject matter."

Further, the scope of preemption under § 434 is informed by its introductory language directing the establishment of national rail safety standards "to the extent practicable." It would be impracticable and inconsistent with this intent, if, assuming walkways are integrally related to track structure and composition, 50 states could establish individual walkway regulations in addition to the FRA standards.

Consequently, "covering the subject matter" must have a practical as well as a policy dimension under the FRSA. It must be "practicable" to permit some state regulation of railroad walkways consistent with FRA track structure and construction requirements. In drawing this conclusion, we find instructive the Supreme Court's decision in *Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978). There, the Court invalidated a Washington state regulation that purported to set minimum safety standards for oil tankers intending to traverse Puget Sound. The Court held that the Federal Tank Vessel Act and its regulatory implementation preempted "state efforts to mandate different or higher design requirements" for oil tankers. *Id.* at 166, 98 S.Ct. at 998 (footnote omitted). The Court's interpretation of the applicable federal laws led it to conclude that "Congress did not anticipate that a vessel found to be in compliance with the Secretary's design and construction regulations ... would nevertheless be barred by state law from operating in the navigable waters of the United States on the ground that its design characteristics constitute an undue hazard." *Id.* at 163–64, 98 S.Ct. at 997. The Court distinguished cases in which it had upheld state

4. *See, e.g., Southern Pacific Transp. Co. v. Public Util. Comm'n of California,* 647 F.Supp. 1220 (N.D.Cal.1986), *aff'd,* 820 F.2d 1111 (9th Cir. 1987) (*per curiam*); *Illinois Central Gulf R.R. Co. v. Tennessee Pub. Serv. Comm'n,* 736 S.W.2d 112 (Tenn.Ct.App.) (permission to appeal denied August 31, 1987). *But Compare Norfolk & Western Ry. Co. v. Burns,* 587 F.Supp. 161 (E.D.Mich. 1984); *Black v. Seaboard System R.R.,* 487 N.E. 2d 468 (Ind.Ct.App.1986); *Black v. B & O Ry. Co.,* 398 N.E.2d 1361 (Ind.Ct.App.1980).

regulations that affected federally registered vessels, where there was no overlap between federal law and state regulations having a different and non-conflicting purpose and implementation. *See, e.g., Huron Portland Cement Co. v. Detroit,* 362 U.S. 440, 80 S.Ct. 813, 4 L.Ed.2d 852 (1960).

■ It likewise appears in this case that the Commission may seek to enforce "different or higher standards" of track construction by superimposing the walkway requirement on federal track geometry and structure regulations. This would be the case if, from a practical standpoint, the width, surface and slope requirements of the state walkway regulation generally add to the FRA standards by requiring the railroad to strengthen or enlarge the roadbed beyond FRA requirements.[5] If the walkway regulation has this effect, we hold that the federal regulation has "covered the subject matter" of track composition and design and that the state regulation conflicts with § 434's purpose to foster national rail safety standards "to the extent practicable."

■ Unlike the district court, however, we are unable to determine from the summary judgment record whether such an overlap exists. The affidavit of Michael McGinley, a railroad engineer, submitted on behalf of the railroads, implies that design, construction and maintenance standards for walkways and railroad track and roadbed are as inseparable as peanut butter from a slice of bread. The Commission, however, submitted a controverting affidavit. The district court perfunctorily dismissed the controverting affidavit, notwithstanding that the Commission's witness purported to contradict McGinley on virtually every salient point he made. We believe there is a material fact issue concerning the interrelationship between the state walkway requirement and federal track regulations. The trial court should not

have determined between these experts' conflicting views on affidavits alone. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). We therefore REMAND this issue for trial.

■ In so doing, we also reject the railroads' contention that the FRA, by declining to promulgate various walkway regulations in the past, has specifically intended to "cover the subject matter" of walkways so as to preempt state regulations. Here the railroads must rely on the principle stated in *Ray* that, "where failure of ... federal officials affirmatively to exercise their full authority *takes on the character of a ruling that no such regulation is appropriate* or approved pursuant to the policy of the statute, states are not permitted to use their police power to enact such regulation." 435 U.S. at 178, 98 S.Ct. at 1004 (quoting *Bethlehem Steel Co. v. New York Labor Relations Board,* 330 U.S. 767, 774, 67 S.Ct. 1026, 1030, 91 L.Ed. 1234 (1947)) (emphasis added). *See also Marshall v. Burlington Northern, Inc.,* 720 F.2d 1149 (9th Cir.1983).

We agree with the district court in *Southern Pacific Trans. Co. v. Public Util. Comm'n of California,* 647 F.Supp. 1220 (N.D.Cal.1986), which found no explicit or implied preemptive expression by FRA in its previous walkway ventures. *Southern Pacific* summarizes two of the agency actions succinctly.

When the FRA decided not to adopt proposed regulation 213.39 relating to obstacles near tracks, it did not do so because it concluded that the regulation was not justified. Rather, the agency decided that the regulation was too vague to be effective. 36 Fed.Reg. 20,-336 (1971). When the FRA decided not to adopt a regulation requiring walkways on trestles and bridges, its reasons related specifically to conditions affecting

---

**5.** The distinction we seek to draw between a functionally overlapping state regulation and one not "covered by the subject matter" of an FRA regulation may be illustrated hypothetically. If the Commission sought to regulate walkway safety by requiring railroads to post signs wherever the walkways were slippery or ob-

structed, we would not find this preempted. Not only does this hypothetical regulation address a hazard not specifically covered by FRA regulations, *see* discussion *infra,* but its implementation in no way adds to the FRA's basic track construction regulations or impairs FRA's superintendence of that field.

##### 576

those structures. 42 Fed.Reg. 22,185 (1977). It did not conclude that a general requirement of walkways was not justified.

647 F.Supp. at 1226. Finally, FRA's 1978 Policy Statement delineating the respective responsibilities of FRA and OSHA over railroad safety matters, while asserting that OSHA should not regulate "walkways beside the track in yards or along the right-of-way," nevertheless stated that "FRA *will determine* the need for and feasibility of general standards related to such surfaces." 43 Fed.Reg. 10,582, 10,587 (1978) (emphasis added).[6] This statement in no way suggests that the FRA has decided as a matter of policy that walkway regulations must be national in character and must preempt state action. The policymaker appears to be saying that "we haven't looked at walkways yet," rather than, as *Ray* requires, "we haven't done anything because we have determined it is appropriate to do nothing." From this standpoint, the FRA's statement implies that unless walkway regulations are otherwise preempted, e.g., by FRA track and roadbed regulations that "cover the subject matter," § 434 could authorize state regulation until the FRA acts.

If the district court determines that the state walkway regulation is not preempted under the foregoing standard, it must then consider the railroads' remaining arguments concerning the walkway regulation not addressed in its original opinion.

#### B.

 But for one facet of its ruling, the district court properly concluded that the Locomotive Boiler Inspection Act of 1911, 45 U.S.C. § 22 *et seq.*, wholly occupies the field of regulation of locomotive equipment to the exclusion of 16 T.A.C. 5.617. *See Napier v. Atlantic Coast Line R.R. Co.*, 272 U.S. 605, 613, 47 S.Ct. 207, 210, 71 L.Ed. 432 (1926); *Consolidated Rail Corp. v. Pennsylvania Pub. Util. Comm'n*, 536 F.Supp. 653, 655 (E.D.Pa.), *aff'd mem.*, 696 F.2d 981 (3d Cir.1982), *aff'd mem.*, 461 U.S. 912, 103 S.Ct. 1888, 77 L.Ed.2d 280 (1983). In *Napier* the Supreme Court stated:

> We hold that state legislation is precluded, because the Boiler Inspection Act, as we construe it, was intended to occupy the field. The broad scope of authority conferred upon the Commission leads to that conclusion. Because the standards set by the Commission must prevail, requirements by the states are precluded, however comendable or however different their purpose.

272 U.S. at 613, 47 S.Ct. at 210 (citations omitted). The district court apparently overlooked, however, 16 T.A.C. 5.617's requirement that fire extinguishers and first aid kits be placed not only on locomotives but on cabooses as well. Cabooses are not within the purview of the Locomotive Boiler Inspection Act, and we find no reason to hold 5.617 preempted to the extent of its application to cabooses. Moreover, the Commission's severability clause applicable to these regulations, 16 T.A.C. 5.621, permits enforcement of 5.617 only in regard to cabooses. We thus affirm the validity of 5.617 as applied to cabooses as a proper exercise of the state's police power.[7]

**6.** Our court's reliance in *Velasquez v. Southern Pacific Transp. Co.*, 734 F.2d 216, 218 (5th Cir. 1984), on the FRA Policy Statement does not bear on this case. The sole issue in *Velasquez* was whether OSHA or FRA regulations applied to a walkway beside a track, for purposes of a personal injury action jury instruction. To hold, as *Velasquez* did, that the FRA Policy Statement prevented plaintiff from securing an instruction on OSHA regulations, does not control the issue of the exercise of FRA jurisdiction to the exclusion of state regulation under § 434.

**7.** Contrary to the Commission's assertion, *Southern Ry. Co. v. Lundsford*, 297 U.S. 398, 56 S.Ct. 504, 80 L.Ed. 740 (1936), does not stand for the proposition that under the Locomotive Boiler Inspection Act state attempts to regulate are preempted only to the extent they prescribe "integral or essential" equipment of a complete locomotive. *Lundsford* held that "mere experimental devices which do not increase the peril, but may prove helpful in an emergency" are not "parts or appurtenances" whose lack of maintenance will subject the railroad to absolute tort liability under 45 U.S.C. § 23. 297 U.S. at 402, 56 S.Ct. at 506. State attempts to prescribe *any* locomotive safety equipment must necessarily fail. *Accord, Marshall v. Burlington Northern, Inc.*, 720 F.2d 1149, 1152 (9th Cir.1983) ("*Lundsford* in no way affects our holding that the Boiler Inspection Act preempts any state regula-

## C.

▮ Turning to 16 T.A.C. 5.620, we reject the district court's finding that federal regulations preempt the state vegetation control provision. The FRA regulations for vegetation control provide:

Vegetation on railroad property which is *on or immediately adjacent to roadbed* must be controlled so that it does not—

(a) Become a fire hazard to track-carrying structures;

(b) Obstruct visibility of railroad signs and signals;

(c) Interfere with railroad employees performing normal trackside duties;

(d) Prevent proper functioning of signal and communication lines; or

(e) Prevent railroad employees from visually inspecting moving equipment from their normal duty stations.

49 C.F.R. 213.37 (1986) (emphasis added). The state, in an effort to prevent visual obstruction to vehicular highway traffic promulgated 16 T.A.C. 5.620(b), which provides:

Each railroad corporation shall control vegetation on its right-of-way (except for the roadbed in areas immediately adjacent thereto) for a distance of 500 feet each way from every public grade crossing so that it does not obscure the view of approaching trains to vehicular road traffic.

The district court held that the entire right-of-way is an "area immediately adjacent to the roadbed" and on this basis concluded that 16 T.A.C. 5.620(b) "covered the same subject matter" for purposes of 45 U.S.C. § 434. 653 F.Supp. at 626. We disagree. The area "immediately adjacent to the roadbed" abuts the roadbed. Right-of-way property can and often does extend several yards from the roadbed, however. Consequently, not all right-of-way property lies "immediately adjacent to the roadbed," and the federal regulation does not "cover the subject matter" of vegetation that is on

the right-of-way but not immediately next to the roadbed.

Additionally, there is no pragmatic overlap of the federal and state regulations such as we found with respect to walkway regulations. The state regulation was designed to apply where the federal requirements end. The Commission's preamble affirms that 5.620(b) "specifically excludes applicability to vegetation on the roadbed and immediately adjacent thereto. ... [T]he commission's section takes effect where the federal rule leaves off. The commission believes that compliance with both rules will ensure a clear line-of-sight adequate to protect vehicle occupants." 11 Tex.Reg. 2741 (June 13, 1986). The Commission drafted its requirement in response to a demonstrable safety need reflected in a 1985 study conducted by the National Transportation Safety Board. The study indicated that in recent train collisions with motor vehicles, obstructions, particularly vegetation obstructions, limited the drivers' views along the railroad. There are no federal standards for minimum sight distance at grade crossings, nor does enforcement of 5.620(b) impair or interfere with FRA regulation 213.37. Consequently, because 5.620(b) does not govern vegetation control on the roadbed and area immediately adjacent thereto, we hold that the state vegetation control requirement is not preempted by § 434 or FRA regulation.

## D.

▮ In its alternative holding that each of the challenged regulations failed to address an "essentially local safety hazard", the district court implicitly invalidated the reporting requirements of 16 T.A.C. 5.616 and 5.618. The court apparently believed obligations "covering the same subject matter" had already been enacted by FRA. We reject this conclusion.

The FRSA provides that when a state agency satisfies the statutory certification

---

tion of locomotive equipment.") Moreover, state court cases upon which appellant relies as establishing a contrary proposition, *see Norfolk & W. Ry. Co. v. Pennsylvania Pub. Util. Comm'n,* 489 Pa. 109, 121, 413 A.2d 1037, 1043 (1980);

*State v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.,* 79 Wash.2d 288, 292–94, 484 P.2d 1146, 1149, *appeal dismissed,* 404 U.S. 804, 92 S.Ct. 108, 30 L.Ed.2d 36 (1971), are unpersuasive and contrary to federal policy.

process, "[a] state may participate in carrying out investigative and surveillance activities in connection with any rule, regulation, order, or standard prescribed by the Secretary...." 45 U.S.C. § 435(a). The House Report on the bill recognized and explicitly preserved the state's participation in enforcement of the federal scheme as a vital element in administration of the Act. House Report at 4109. Indeed, the FRA's regulations indicate that states provide an "enhanced investigative and surveillance capability," 49 C.F.R. 212.101 (1986), and contemplate a coordinated investigative and surveillance effort between the states and FRA. 49 C.F.R. 212.109 (1986).

 Consistent with this enforcement scheme, the Commission adopted certain regulations enabling it to contribute optimally, by requiring simultaneous filing with the Commission of documents required by the FRA. Such reporting regulations do not offend the Act. *See Coleman,* 542 F.2d at 15. Moreover, we do not find the Commission's additional reporting requirements proscribed under the Act. In *Coleman,* the Third Circuit approved contemporaneous filing of copies of FRA-mandated reports with the state, but it also held that the FRA regulation there specifically preempted states from prescribing additional "accident/incident" reporting requirements. *See* 49 C.F.R. 225.1. Here, by contrast, the Commission regulations do not require the railroads to create any additional reports. The Commission only requires the filing of documents such as maps and charts already maintained by the companies. *See* note 1 *supra.* Given the overall surveillance scheme contemplated by the FRSA, federal proscription of the Commission's reporting requirements in 16 T.A.C. 5.616 and 5.618 is not warranted.

### III.

We summarize our holding as follows: We reverse the district court's conclusion that the Commission's walkway requirement, 16 T.A.C. 5.619, is preempted by federal regulation covering the "same subject matter," and we remand this issue for further proceedings. We affirm the dis-

trict court's conclusion that the Commission's attempt to regulate safety equipment on locomotives is preempted by the Locomotive Boiler Inspection Act of 1911; however, we reverse the district court's conclusion that the requirements of 16 T.A.C. 5.617 concerning safety equipment on railroad cabooses is preempted. Third, we reverse the conclusion that the vegetation control provision, 16 T.A.C. 5.620(b), is preempted. Fourth, we reject the court's implicit holding that the filing requirements of 16 T.A.C. 5.616 and 5.618 are preempted.

AFFIRMED in part, REVERSED in part, and REMANDED.