Requestor: James D. Featherstonhaugh, Village Attorney Village of Delanson Capital Center 99 Pine Street Albany, New York 12207-2734
Written by: James D. Cole, Assistant Attorney General in Charge of Opinions
You have asked whether a village is authorized to enact a local law prohibiting the idling of diesel train engines for more than 15 minutes within village limits. You have indicated that these trains idle in the village for many hours, emitting exhaust fumes which are considered to be a threat to the health of residents.
Local governments have authority to enact and amend local laws relating to the government, protection, order, conduct, safety, health and well-being of persons or property therein (Municipal Home Rule Law, § 10[1][ii][a][12]). This is the grant of police power to local governments. Local laws seeking to protect the environment fall squarely within this grant of police power (Matter of Frew Run Gravel Products, Inc. v Town of Carroll, 71 N.Y.2d 126 [1987]; Jancyn Mfg. Corp. v County of Suffolk, 71 N.Y.2d 91 [1987]).
This grant of power, however, is not without limitation. A municipality may not enact local laws that are inconsistent with the Constitution or a general State law (Municipal Home Rule Law, § 10[1]). Also, a local government may not exercise its police power when the State has indicated a purpose to preempt the field of regulation (NYS Club Assn., Inc. v Cityof NY, 69 N.Y.2d 211, 217 [1987]; Con Ed v Town of Red Hook, 60 N.Y.2d 99
[1983]; People v Cook, 34 N.Y.2d 100, 105-106 [1974]).
It is clear that the proposed local legislation is not inconsistent with or preempted by State law. Provisions of State law governing air pollution control state that
 "[i]t is the purpose of this article to provide additional and cumulative remedies to prevent and abate air pollution. . . . [The provisions of the article are not to be construed] as estopping individuals, counties, cities, towns or villages or the state from the exercise of their respective rights to suppress nuisances or to prevent or abate air pollution or air contamination" (Environmental Conservation Law, § 19-0703).
Article 19 of the Environmental Conservation Law is ancillary to and supplements existing air pollution laws, except laws that are in conflict with the provisions of the article (id., § 19-0707).
Current State regulations restrict the idling of diesel engines in buses and trucks only (6 NYCRR § 218.2[b]). We have found no regulations at the State level dealing with the idling of diesel train engines. Thus, we believe a local regulation restricting the idling of diesel train engines is consistent with State law.
Evenhanded local regulation to effectuate a legitimate local public interest is valid unless preempted by Federal action or unduly burdensome on interstate commerce (Huron Portland Cement Co. v Detroit, 362 U.S. 440,443 [1960]; Pike v Bruce Church, Inc., 397 U.S. 137, 142 [1970]). At the Federal level, air pollution control is regulated by the Clean Air Act and railway safety is regulated by the Federal Railroad Safety Act. While both concern matters related to the problem faced by Delanson, neither appears to regulate it directly. Moreover, both statutes explicitly recognize and provide for a continuing local role in protecting health and welfare.
The Clean Air Act, in its section "Congressional findings and declarations of purpose", declares that "the prevention and control of air pollution at its source is the primary responsibility of States and local governments" (42 U.S.C. § 7401[a][3]). Specifically addressing retention of authority by "any State or political subdivision thereof" to control particular sources, the Act disallows regulation of only the moving sources already covered by its own provisions (motor vehicles and aircraft) (42 U.S.C. § 7416). (States and their subdivisions are restricted in the areas of standards of performance for new stationary sources [42 U.S.C. § 7411] and national emission standards for hazardous air pollutants [42 U.S.C. § 7412], but only in that they may not adopt any standard less stringent than the Federal one [42 U.S.C. § 7416].)
The local authority to regulate the idling of a diesel train so as to reduce emissions is thus supported by Federal air pollution control law. A similar issue arose in Texas v Environmental Protection Agency,499 F.2d 289 (5th Cir, 1974), cert den 427 U.S. 905 (1975). Finding the Texas State Implementation Plan for national ambient air quality standards for hydrocarbons insufficient, EPA exercised its power to act in the State's place and imposed more stringent provisions. Texas contested EPA authority to impose controls on hydrocarbon emissions during loading and unloading of ships and barges. Its argument was based on congressional history; i.e., on the fact that a provision for EPA implementation of national standards for vessel emissions was eliminated from draft legislation, leaving only those dealing with automobiles and aircraft. The Court explained that national standards were not at issue. Rather, the question was one of the regional implementation of air quality standards. More important, the national emissions standards only concerned motive power and associated emissions, not "the myriad of emissions such as those from the loading and unloading of vessels" (id.,
at 316-317). The Court held that even though Congress required national standards for certain vehicle emissions, those which were not so regulated remain available for local control.
The relationship of the proposed village law to the Federal Railroad Safety Act (FRSA) is a little less straightforward. According to the FRSA, its purpose is "to promote safety in all areas of railroad operations" (45 U.S.C. § 421). The Act authorizes the Secretary of Transportation, who in turn has delegated that authority to the Federal Railroad Administration, to "prescribe, as necessary, appropriate rules, regulations orders, and standards for all areas of railroad safety" (id., § 431; 49 C.F.R. § 1.49[m]). The FRSA states that railroad safety regulations "shall be nationally uniform to the extent practicable" (45 U.S.C. § 434). At the same time, it recognizes the role of local regulation:
 "A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement. A State may adopt or continue in force an additional or more stringent law . . . relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law . . . and when not creating an undue burden on interstate commerce" ( 45 U.S.C. § 434).
This provision raises the question whether diesel train emissions are a safety concern within the meaning of the FRSA. Southern Pacific Transp.Co. v Public Utilities Comm'n of California, 647 F. Supp. 1220 (ND Cal, 1986), affd 820 F.2d 1111 9th Cir, 1987), involved state orders prescribing the minimum distance to be maintained between freight cars and surrounding structures and requiring a two-foot wide walkway on each side of the tracks. The court agreed with California that the Federal regulations did not cover the same safety concerns as the state's because the Federal regulations were designed to insure that tracks have adequate support, and that employees can perform necessary maintenance work, but no Federal regulation addressed the concern that employees have a safe working environment near railroad tracks (id., at 1225). The state orders were allowed to remain in effect.
An "essential difference in purpose" will save a local regulation from preemption (Missouri Pacific R. Co. v Railroad Comm'n of Texas, 833 F.2d 570
[5th Cir, 1987], rep den 845 F.2d 1022 [1988]). In that case, the court said there was at least a material factual issue whether state imposition of walkway requirements were meant to address a hazard not specifically covered by Federal regulation. If there were in fact some overlap, the state efforts to impose stricter requirements would be preempted (id., at 574-575).
In our view, a local law protecting the health and safety of the surrounding population is not preempted by Federal control of the safety of railroad operations. The purpose of the Delanson law is protection of health and environment through air quality control, a subject not covered by the Federal regulations.
Given the legitimate local public interest behind the proposed law and the absence of any preemption by Federal regulation, the question remains whether a law would impose an undue burden on interstate commerce. Despite incidental effects on interstate commerce, a law will be upheld unless the burden imposed is "clearly excessive in relation to the putative local benefit" (Pike v Bruce Church, Inc., 397 U.S. 137, 142
[1970]). The question is one of degree. For instance, demonstrating that a regulation imposes costs on interstate operations is not enough to render it invalid (Bibb v Navajo Freight Lines, 359 U.S. 520, 528-529
[1959]). In Southern Pacific Co. v Arizona, 352 U.S. 761 (1945), the leading case in this area, a state law limiting the length of trains was struck down by the Court on the ground that it imposed a substantial burden on interstate commerce. The Court recognized the safety interest behind the law, but found it to be outweighed by its burden on commerce (id., at 775). For a more recent example, Kassel v ConsolidatedFreightways Corp., 450 U.S. 662 (1981), involved a state prohibition on the use of 65-foot double trailers on Iowa highways. The Court found the safety benefit to be minimal and concluded that the disruption that the law would create for the many shippers who relied on the commonly used 65-foot trailer outweighed the state interest.
The Court's approval of the Detroit Smoke Abatement Code in Huron
provides the most explicit support for the proposed law. The Court pointed out the ordinance did not exclude any licensed vessels from the Port of Detroit, nor destroy the right of passage. It only required "compliance with an orderly and reasonable scheme of community regulation" (Huron, at 447-448). While some structural alterations were required for certain ships to comply with the Code, this was not a reason to find an undue burden, or to suggest discrimination against interstate traffic as such (id., at 448).
In our view, the village has authority under its grant of police power to enact the proposed regulation in order to protect the health, safety and welfare of persons in the village.
We conclude that a village is authorized to enact a local law restricting the idling within the village of diesel train engines.
The Attorney General renders formal opinions only to officers and departments of the State government. This perforce is an informal and unofficial expression of views of this office.