**MISSOURI PACIFIC RAILROAD COMPANY, et al., Plaintiffs–Appellees/Cross–Appellants,**

v.

**RAILROAD COMMISSION OF TEXAS and its members, et al., Defendants–Appellants/Cross–Appellees.**

No. 90–8574.

United States Court of Appeals, Fifth Circuit.

Dec. 6, 1991.

Douglas Fraser, Asst. Atty. Gen. and Dan Morales, Atty. Gen., Austin, Tex., for defendants-appellants/cross-appellees.

Robert B. Burns, Jr. and Karl G. Johnson, Jr., Wilson, Grosenheider & Burns, Austin, Tex., for plaintiffs-appellees/cross-appellants.

Hugh L. McCulley, Crady, Jewett & McCulley, Houston, Tex., for Southern Pacific Transp.

Before WISDOM, JOLLY, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

In this case, we decide whether the Tex.Admin.Code tit. 16, § 5.619, which requires railroads to construct and maintain walkways adjacent to railroad trackage in accordance with certain specifications, is preempted by the Federal Railroad Safety Act of 1970 (the FRSA), 45 U.S.C. § 421 *et seq.* The district court held that the state walkway provision was preempted, and we now affirm.

## I.

In 1986, the Railroad Commission of Texas (the Commission) adopted section 5.619 pursuant to Tex.Rev.Civ.Stat.Ann. art.

6448a, which authorizes the Commission "to perform any act and issue any rules and orders as permitted by" the FRSA. The railroads filed this action against the Commission, seeking the invalidation of a series of rail safety regulations, including section 5.619. The railroads alleged, *inter alia,* that the regulations were preempted by federal law, constituted an undue burden on interstate commerce, and were arbitrary, capricious, and not supported by substantial evidence. The district court granted the railroads' motion for partial summary judgment, holding that the regulations were preempted by federal law. *Missouri Pac. R.R. v. Railroad Comm'n,* 653 F.Supp. 617 (W.D.Tex.1987).

On appeal, we affirmed the district court's decision except as applied to section 5.619. *Missouri Pac. R.R. v. Railroad Comm'n,* 833 F.2d 570 (5th Cir.1987) (*MoPac I*). We held that summary judgment was inappropriate with regard to section 5.619 because there existed "a material fact issue concerning the interrelationship between the state walkway requirement and federal track regulations." *Id.* at 575. We therefore remanded the case for trial on this issue.

By stipulation, the parties agreed that the case would be tried to the court solely on documentary evidence. After considering all the evidence, the court concluded that section 5.619 was preempted by federal law and dismissed the remaining claims as moot. The Commission now appeals the court's conclusion on the preemption issue; the railroads cross-appeal the dismissal of their remaining claims.

## II.

■ We review the district court's legal conclusions *de novo* and its factual findings for clear error. Fed.R.Civ.P. 52(a); *Carr v. Alta Verde Indus.,* 931 F.2d 1055, 1058 (5th Cir.1991).[1] More specifically, we

---

1. In a case cited by the railroads, we noted that "the degree of deference to be accorded a district court's findings of fact is lower when the case is submitted wholly on documents than in the situation where the evidence is presented by witnesses appearing before the district court." *Bull's Corner Restaurant v. Director of the Fed.*

*Emergency Management Agency,* 759 F.2d 500, 502 (5th Cir.1985) (quoting *Onaway Transp. Co. v. Offshore Tugs, Inc.,* 695 F.2d 197, 200 (5th Cir.1983)). *Bull's Corner,* however, was decided before the 1985 amendment to rule 52(a), which now reads, "Findings of fact, whether based on oral or documentary evidence, shall not be set

will reject the district court's factual findings "only if our review of the entire record impels the definite and firm conviction that a mistake has been committed." *Carr*, 931 F.2d at 1058 (citation omitted). This standard is a deferential one: If the district court's account of the evidence is plausible in light of the whole record, we may not reverse it even though we would have weighed the evidence differently had we been sitting as the trier of fact. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). *See also Houston Oil & Minerals Corp. v. American Int'l Tool Co.*, 827 F.2d 1049, 1055 (5th Cir.1987), *cert. denied*, 484 U.S. 1067, 108 S.Ct. 1031, 98 L.Ed.2d 995 (1988).

### III.

Section 5.619(a)(1) mandates the construction of walkways "alongside a railroad track or railroad switch for the purpose of providing an area for a railroad employee to perform duties associated with that track." The walkways are to extend a minimum of six feet from the "outside end of the crossties." § 5.619(d). The state regulation also specifies the surface condition, slope, and location of the walkways. *See* § 5.619(b), (c) & (e).

No federal regulation directly addresses or requires the construction of walkways. Federal regulations do, however, govern the roadbed and track support materials to which the walkways would be attached. 49 C.F.R. subparts B, D.[2] As we noted in *MoPac I*, "[l]iterally and figuratively, the walkways required by the state regulations sit atop and adjoin the roadbed for which

[federal regulation] has prescribed minimum specifications." 833 F.2d at 574.

▮▮▮▮ When, as in this case, a state's exercise of its police power is challenged under the Supremacy Clause, we start with the assumption that "the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947) (citations omitted). The purpose of Congress can be found in the language of the FRSA, which declares that

laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary [of Transportation] has adopted a rule, regulation, order, or standard *covering the subject matter of such State requirement*. A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety *when necessary to eliminate or reduce an essentially local safety hazard*, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce.

45 U.S.C. § 434 (emphasis added). Thus, whereas section 434 mandates national railroad safety standards "to the extent practicable," it permits states to regulate in two situations.

The first is where "no federal standard has yet been adopted 'covering the subject

aside unless clearly erroneous...." *See also McFarland v. T.E. Mercer Trucking Co.*, 781 F.2d 1146, 1148 (5th Cir.1986) (*Bull's Corner's* distinction no longer valid given 1985 amendment).

**2.** The roadbed is the area of soil that supports the ballast, which is the "permeable, granular materials such as sand, gravel, crushed rock or slag, chat, cinders, and so on placed around and under the ties to promote track stability." William W. Hay, *Railroad Engineering*, 393 (2d ed. 1982). Under federal regulations, the roadbed

and "areas immediately adjacent to [the] roadbed" must be maintained in order to prevent vegetation and drainage problems. 49 C.F.R. §§ 213.31, –.33, –.37. The ballast must "[t]ransmit and distribute the load of the track and railroad rolling equipment" to the roadbed; "[r]estrain the track laterally, longitudinally, and vertically under dynamic loads imposed by railroad rolling equipment and thermal stress exerted by the rails"; "[p]rovide adequate drainage for the track"; and "[m]aintain proper track cross-level, surface, and alinement." 49 C.F.R. §§ 213.103(a), (b), (c) & (d).

matter' of the state regulation." *MoPac I,* 833 F.2d at 573. The second is where the state seeks "to eliminate or reduce 'an essentially local safety hazard.'" *Id.*

In *MoPac I,* we addressed section 5.619 in the former context. *Id.* at 573 n. 2. We stated that railroad walkways would be "subject matter" that was "covered" by federal regulation "if, from a practical standpoint, the width, surface and slope requirements of the state walkway regulation generally add to the [federal] standards by requiring the railroad to strengthen or enlarge the roadbed beyond [federal] requirements." *Id.* at 575 (footnote omitted).

On remand, the district court found that section 5.619 was preempted because the requirements of the walkway provision in fact would add to the federal standards. In the alternative, the court held that section 5.619 could not be justified as addressing a "local safety hazard" because the regulation has statewide application.

We first address the district court's holding that section 5.619 adds to federal requirements, and then turn to its alternative holding. Finally, we address the parties' remaining grounds for error, including the railroads' cross-appeal.

## IV.

### A.

■ We asked the district court on remand to answer the following question: do the state walkway specifications "requir[e] the railroad to strengthen or enlarge the roadbed beyond [federal] requirements."? *MoPac I,* 833 F.2d at 575. The district court held that "the roadbed would, in fact, have to be enlarged laterally and strengthened in order to support the walkway." It

went on to state that "the body of material used to support the walkway would have to adjoin the roadbed in such a way that it would be integrated with it and, in essence, merely become an extension of it."

The district court based its conclusion in part upon testimony provided by the railroads' expert, Robert E. Ahlf, a railroad engineering consultant who had collected data on the trackage affected by the walkway regulation. He concluded that in order to accommodate the walkways required by section 5.619, the track support structures would have to be enlarged in approximately forty percent of the trackage on which walkways would be built. The court also relied upon caselaw from other jurisdictions in which courts have held that state regulations covering walkways are preempted by federal regulations on the ground that walkways are an integral part of track support structures.[3]

The Commission contends that its evidence effectively rebuts the evidence presented by the railroads and that therefore we should reverse the district court's finding that the roadbeds and track support structures would have to be enlarged beyond federal requirements in order to accommodate the walkways. The Commission essentially reargues the evidence it presented to the district court. For example, the Commission points to the fact that its expert, Dr. W. Ronald Hudson, a transportation engineering professor, testified that walkways are not an integral part of the track structure because they do not bear the load created by the train traffic. It also refers to testimony by another Commission witness, Vence L. Haggard, a railroad safety inspector for the Commission, who stated that the federal regulations apply only to the traffic-bearing portions of the roadbed.

---

3. *See Norfolk & Western Ry. v. Burns,* 587 F.Supp. 161, 170 (E.D.Mich.1984) (state occupational safety and health regulations along walkways preempted by FRSA); *Black v. Baltimore & Ohio R.R.,* 398 N.E.2d 1361 (Ind.Ct.App.1980) (allegations of muddy conditions in areas adjacent to track based upon state law claims preempted by FRSA); *Black v. Seaboard System R.R.,* 487 N.E.2d 468 (Ind.Ct.App.1986) (state standards for construction and maintenance of walkways preempted by FRSA). *But see Illinois Cent. Gulf R.R. v. Tennessee Pub. Serv. Comm'n,* 736 S.W.2d 112 (Tenn.Ct.App.1987) (state walkway regulations not preempted by FRSA); *Southern Pac. Transp. Co. v. Public Util. Comm'n,* 647 F.Supp. 1220 (N.D.Cal.1986), *aff'd per curiam,* 820 F.2d 1111 (9th Cir.1987) (same).

■ The Commission must show, however, that the district court clearly erred. This it cannot do. There is nothing in our review of the record that leaves us with "the definite and firm conviction that a mistake has been committed." *Carr*, 931 F.2d at 1058. In this case, the district court found the evidence presented by the railroads' expert to be "more persuasive" and "more credible" than that presented by the Commission's experts. Although both the Commission and the railroads presented convincing evidence, we cannot "reverse the trial court's selection" where "there are two or more permissible views of the record evidence." *Houston Oil*, 827 F.2d at 1055 (citation omitted).

## B.

■ The district court also found that the construction of walkways would impair drainage and weaken the track support structures. Federal regulations require that the track be supported by material that will "[t]ransmit and distribute the load of the track and railroad rolling equipment to the [roadbed]" as well as "[p]rovide adequate drainage for the track." 49 C.F.R. § 213.103(a), (c). In essence, the court held that the walkway provision not only would "add" to federal requirements but actually would contravene them.

Both the railroads and the Commission produced expert testimony on this issue. Ahlf testified that the railroads generally use large-diameter stone material under the tracks because such material provides greater support for the train traffic and maximum drainage capability. According to Ahlf, the smaller material mandated by the state walkway regulation [4], during regular maintenance procedures, would mix with the larger material under the track. This, Ahlf concluded, would cause drainage problems and weaken the ability of the track structure to support train traffic.

Hudson testified that there would be no drainage problem because the material used in constructing the walkways would be permeable. The Commission concludes from this that any impediment would be only "hypothetical," "much in this same sense that a sieve acts as a hypothetical impediment to water poured through it." The Commission's expert also noted that the track structure and roadbed would be weakened only if the railroads continued to use their current maintenance procedures, a fact that should be disregarded because such procedures "are wholly in the hands of the railroads."

Again, the district court found the railroads' expert to be more convincing. Again, we cannot say that the district court's choice is clearly erroneous. Moreover, the issue is somewhat beside the point. Even if the addition of walkways did not create drainage problems or weaken the roadbed, the state provisions would still require the railroads to enlarge and strengthen existing roadbeds to accommodate the walkways—which is enough to support a finding of preemption under our analysis in *MoPac I.*

## C.

■ The Commission also maintains that the district court impermissibly considered the cost to the railroads of constructing these walkways. It points to the court's statement that "[i]t is a specious argument to say simply that section 5.619 merely requires a walkway and that it is up to the railroads to comply by whatever means or cost necessary." The court, however, was merely responding to the Commission's argument that, as the court phrased it, "the walkway requirement is a rule with independent application from the federal regulations and ... compliance with the walkway rule would have no impact on compliance with the federal regulations."

In essence, the district court was suggesting that regardless of whether it was

---

**4.** Section 5.619(b)(2) requires that walkways be surfaced with "crushed materials not to exceed 1½ inches in size or with asphalt, concrete, secured planking, grating, or similar material." Ahlf testified that railroads generally use crushed material that is much larger than 1½ inches in diameter to support the track. Although the state regulation allows the railroads to use material other than crushed stone under the walkways, one of the Commission's experts (Hudson) conceded that as a practical matter

theoretically possible to comply with both federal and state regulations, the state walkway requirement would still have a practical impact on compliance with federal regulations in that it would require the railroads to enlarge or strengthen the track support structures beyond federal requirements. Thus, while the district court did consider the structural changes that were necessary for the railroads to comply with the state's walkway regulation in light of the current material composition of its track support structures and the procedures used to maintain them, it did not consider the cost of enlarging these structures *per se.* Thus, we do not find that the district court impermissibly relied upon cost of compliance.

### D.

■ Finally, the Commission complains that it was "reversible error" for the district court to have relied upon a 1978 Policy Statement by the Federal Railroad Administration (FRA), the government agency that enforces the FRSA. The policy statement delineates the respective responsibilities of the FRA and the Occupational Safety and Health Administration (OSHA) with regard to railroad safety matters. It states that OSHA should not regulate "walkways beside the tracks in yards or along the right-of-way" because

> [t]hese are areas which are so much a part of the operating environment that they must be regulated by the agency with the primary responsibility for railroad safety. Therefore, FRA will determine the need for and feasibility of general standards to address individual hazards related to such surfaces, keeping in mind the requirement of proper clearances and the familiarity of employees with existing industry designs.

43 Fed.Reg. 10,583, 10,587 (1978).

crushed stone is the material most likely to be used.

**5.** The district court mentioned the policy statement after noting that there had been a great deal of practical involvement of the FRA in inspecting areas adjacent to the roadbeds. The railroads submitted evidence showing that the

In a 1986 opinion letter, the Chief Counsel of the FRA stated that section 5.619 was preempted by federal regulation because the subject matter had been covered by federal regulation. The Chief Counsel relied upon the 1978 Policy Statement. The district court noted the existence of both documents in summarizing the railroads' evidence.[5]

The Commission argues that the court's reliance upon the policy statement was improper because we "specifically rejected" it in *MoPac I.* We did reject in *MoPac I,* the railroads' reliance upon the policy statement to show that federal regulation preempted section 5.619 because the FRA had failed to promulgate regulations with regard to walkways. The railroads argued that the "FRA, by declining to promulgate various walkway regulations in the past, has specifically intended to 'cover the subject matter' of walkways so as to preempt state regulations." 833 F.2d at 575. We rejected this reasoning, noting that the FRA in its statement seemed to be saying "we haven't looked at walkways yet" rather than "we haven't done anything because we have determined it is appropriate to do nothing." *MoPac I,* 855 F.2d at 576. Thus, we concluded that "the FRA's statement implies that unless walkway regulations are otherwise preempted, e.g., by FRA track and roadbed regulations that 'cover the subject matter,' § 434 could authorize state regulation until the FRA acts." *Id.*

Thus, in *MoPac I* we rejected the use of the FRA policy statement only to the extent that the railroads utilized it in an attempt to show that state walkway regulations were preempted because the FRA had failed to act on the subject. We did not say, however, that the statement could not be used to show that the state regulations would be preempted if the FRA chose to act. The district court apparently shared our view when it held that the

FRA has regulated walkway conditions on at least two recent occasions in Texas. The district court concluded from this, as well as from the policy statement, that while the FRSA does not specifically refer to walkways, the FRA has asserted jurisdiction over this area of railroad safety.

roadbeds would have to be extended beyond federal specifications in order to accommodate the walkways. We therefore reject the Commission's suggestion that the "district court's decision is irreparably tainted" by its consideration of the policy statement and opinion letter.

## V.

After concluding that the state walkway provision would be preempted under section 434 because federal regulations had covered the subject matter, the district court went on to find in the alternative that the provision could not be justified as addressing a "local safety hazard." Under section 434, a state may adopt "an additional or more stringent law, rule, regulation, order, or standard" when such state regulation (1) is "necessary to eliminate or reduce an essentially local safety hazard"; (2) is "not incompatible with" federal regulations; and (3) does not create "an undue burden on interstate commerce." 45 U.S.C. § 434; *Donelon v. New Orleans Terminal Co.*, 474 F.2d 1108, 1112 (5th Cir.), *cert. denied*, 414 U.S. 855, 94 S.Ct. 157, 38 L.Ed.2d 105 (1973). The district court held that the walkway provision failed the first prong of the test because it is applicable statewide and therefore could not address a "local" safety hazard. The court also noted that the state provision would fail the second prong of the test as well because it would, *inter alia*, "impede the drainage capability of the track structure."

The Commission claims that the court erred in considering the "local safety hazard" exception in this instance. It argues that it has "always conceded that the walkways rule has statewide application" and that it has not attempted to justify the regulation under the "local safety hazard" test of section 434. We noted this fact in *MoPac I*, where we stated that "the Commission does not seek to justify the challenged regulations under the [local hazard] alternative, and we shall therefore not discuss it." 833 F.2d at 573 n. 2. Our position is the same today. Because we rest our affirmance on the district court's finding that the walkway provision would require railroads to enlarge track support structures beyond federal requirements, we need not and do not reach the propriety of the district court's alternative holding.

The Commission responds by requesting us to "strike the [district court's] further finding that the regulation is incompatible with federal regulations" on the ground that such a finding "could prevent the Commission from requiring a safe working area in a specific location...." We decline to take such action. We do, however, note that the district court's finding on the issue of incompatibility is an alternative holding, and we leave it to future courts to treat it accordingly.

## VI.

The Commission also asks us to reconsider our earlier decision in *MoPac I* to use a "practical" factual test for determining the meaning of the phrase "covering the subject matter of such State requirement" found in section 434. It contends that our panel's test ignores the plain language of this section as determined by the Ninth Circuit in *Southern Pac. Transp. Co. v. Public Util. Comm'n*, 647 F.Supp. 1220 (N.D.Cal.1986), *aff'd per curiam*, 820 F.2d 1111 (9th Cir.1987); our circuit's preemption principles as described in *Burlington N.R.R. v. Public Util. Comm'n*, 812 F.2d 231 (5th Cir.1987); congressional intent as indicated in the hearings on the FRSA; and the Supreme Court's decisions on the federal preemption of state regulations.

We see no reason to reconsider our earlier decision. First, we considered and rejected the Commission's arguments in *MoPac I*. Second, as the railroads correctly point out, the Commission did not appeal our *MoPac I* decision. Finally, it is a "well-known and longstanding rule of decision in this circuit that one panel cannot overrule another." *Samaad v. City of Dallas*, 922 F.2d 216, 219 (5th Cir.1991) (footnote omitted). We therefore reaffirm our holding in *MoPac I*.

## VII.

■ On their cross-appeal, the railroads contend that the district court erred in not ruling on their remaining causes of action. This argument is without merit. In *MoPac I*, we stated that "[i]f the district court determines that the state walkway regulation is not preempted under the foregoing standard, it must then consider the railroads' remaining arguments concerning the walkway regulation not addressed in its original opinion." 833 F.2d at 576. Because the district court found that section 5.619 is preempted, it did not need to reach the railroads' additional causes of action. The district court's dismissal of those remaining claims therefore was proper.

## VIII.

In sum, the district court's finding that section 5.619 would require the railroads to enlarge or strengthen existing roadbeds to accommodate walkways is not clearly erroneous. We therefore AFFIRM its decision that section 5.619 is preempted by federal regulation based upon our preemption analysis set forth in *MoPac I*. Because we affirm the court's decision on this ground, we decline to reach the propriety of the district court's alternative holding that section 5.619 cannot be justified as addressing a "local safety hazard" under 45 U.S.C. § 434. We also decline to reconsider the preemption analysis we set forth in *MoPac I*. Finally, with regard to the railroads' cross-appeal, we AFFIRM the district court's dismissal of their remaining causes of action.