**Kimberly WILLIAMS Plaintiff,**

v.

**NATIONAL RAILROAD PASSENGER CORPORATION (Amtrak) Defendant.**

**No. 1:04 CV 711.**

United States District Court, E.D. Texas, Beaumont Division.

Aug. 18, 2005.

Michael C. Engelhart, Engelhart & Greenwood, Houston, TX, for Plaintiff.

Daniel V. Flatten, Jessica Lottie Averitt, Jenkens & Gilchrist, Houston, TX, for Defendant.

### *MEMORANDUM & ORDER DISMISSING PLAINTIFF'S CLAIMS OF NEGLIGENCE*

COBB, District Judge.

Plaintiff Kimberly Williams ("Williams") is suing defendant National Railroad Passenger Corporation ("Amtrak"), alleging that she was injured on one of Amtrak's trains when a tray table fell down and injured her knee. Williams first sued for inadequate maintenance, management, and failure to warn. She then amended her complaint to include claims of negligence, alleging that Amtrak's tray tables are too heavy, do not work properly, and do not "comply with known federal, state, local, and commercial engineering and safety codes and regulations." Amtrak has filed a motion to dismiss the new claims, arguing that they are preempted by the Federal Railroad Safety Act ("FRSA"). Because the new claims assert state law

causes of action preempted by federal law, they must be DISMISSED.

**Analysis**

The FRSA was enacted to "promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. Included in the FRSA is an express preemption provision:

> Laws, regulations, and orders related to railroad safety shall be nationally uniform to the extent practicable. A state may adopt or continue in force a law, regulation, or order relating to railroad safety until the Secretary of Transportation prescribes a regulation or issues an order covering the subject matter of the state requirement. A state may adopt or continue in force an additional or more stringent law, regulation, or order relating to railroad safety when the law, regulation, or order -
>
> (1) is necessary to eliminate or reduce an essentially local safety hazard;
>
> (2) is not incompatible with a law, regulation, or order of the United States Government; and
>
> (3) does not unreasonably burden interstate commerce.

49 U.S.C. § 20106.

 Despite this provision, preemption under the FRSA is not favored. The Fifth Circuit has held that "FRSA preemption is even more disfavored than preemption generally." *United Transp. Union v. Foster*, 205 F.3d 851, 860 (5th Cir. 2000) (citing *Rushing v. Kansas City S.*

*Ry. Co.*, 185 F.3d 496, 515 (5th Cir.1999)). Preemption should be found "only if the federal regulations substantially subsume the subject matter of the relevant state law." *Id.* (citing *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993)). When applying FRSA preemption, the court eschews broad categories such as "railroad safety," focusing instead on the specific subject matter contained in the federal regulation. *Id.* Courts should "interpret the relevant federal regulations narrowly to ensure that the careful balance that Congress has struck between state and federal regulatory authority is not improperly disrupted." *Id.*

Amtrak notes that 49 U.S.C. § 20133(a)[1] gives the Secretary of Transportation authority to regulate passenger car safety and that the Secretary has issued more than a thousand pages of regulations concerning passenger car safety. The only regulations specifically governing interior fixtures were enacted in 49 C.F.R. § 238.233(e) and cited by Williams in her amended complaint. Section 238.233(e) mandates that "sharp edges and corners in a locomotive cab and a passenger car shall be either avoided or padded to mitigate the consequences of an impact with such surfaces."

However, section 238.233(e) applies only to passenger cars ordered on or after September 8, 2000 or put into service on or after September 9, 2002. Amtrak claims that the decision to limit safety features to new passenger cars implies a conscious decision to exempt the older cars.[2] Ac-

---

**1.** 49 U.S.C. § 20133(a)

(a) **Minimum Standards**—Secretary of Transportation shall prescribe regulations establishing minimum standards for the safety of cars used by railroad carriers to transfer passengers. Before prescribing such regulations, the Secretary shall consider-

(1) the crashworthiness of the cars

(2) **interior features** (including luggage restraints, seat belts, and exposed surfaces) that may affect passenger safety

(3) ...

**2.** Amtrak did not cite any statutes, regulations, or administrative records to that effect

cording to Amtrak, the federal interest in "uniform[ity]" laid out in 49 U.S.C. § 20103 precludes any further state regulation. Amtrak insists that a decision *not* to issue regulation must be given the same deference as a decision *to* issue regulation.

Williams disagrees, citing *Foster* and *Rushing* for the principle that there is no negative preemption under the FRSA. (Plaintiff's Response, page 4). Although those cases do contain language emphasizing the limited scope of FRSA preemption, neither case stands for the principle claimed by Williams. In *Foster* and *Rushing,* the federal laws at issue preempted state laws requiring specific locomotive equipment. The federal laws did not govern the use of that equipment. *See Rushing,* 185 F.3d at 515–16 (regulations as to sound-producing capacity of equipment do not subsume state regulations governing when or how the equipment is actually sounded); *Foster,* 205 F.3d at 862 (same).

In her sur-reply, Williams also suggests that "one significant interpretation of the fact that the Secretary only caused the regulation to apply to cars that are now less than five years old is that the Secretary was encouraging common carriers like Amtrak to replace their old cars to avoid such commonlaw negligence claims." (Plaintiff's Sur–Reply, page 2). Yet Williams has offered nothing to show that the Secretary actually intended any such thing. She does not explain why the regulations did not require padding for all passenger cars. Nor does she explain why— if the promulgators intended simply to encourage such action—they did not offer any words to that effect.

■ The key question is therefore whether the tray tables in pre–2000 passenger cars are part of the same "subject matter" covered by 49 C.F.R. § 238.233(e). Williams admits that:

the Secretary could have regulated these tray tables. Indeed, the Secretary does regulate them for cars that are five years old or less as of this writing . . . If he had promulgated one sentence dealing with tray tables or interior surface padding or the speed or force of a tray tables' descent in cars put into service as of 1980, Plaintiff would not have this part of her lawsuit left. [emphasis in original]

(Plaintiff's Sur–Reply, page 3). The parties therefore agree that, had the Secretary enacted the regulations *without* a date limitation, they would be controlling and would preempt Williams's state law claims.

■ Instead, however, the Secretary promulgated regulations *but explicitly limited* the scope of those regulations. That limitation was not reached accidentally. The regulations were established as "a comprehensive set of necessary safety regulations for railroad passenger equipment." 62 Fed.Reg. 49,732 (Sept. 23 1997). The Federal Railroad Administration ("FRA"), which actually promulgated the regulations, offered *four* sentences explaining the decision to limit regulation to new passenger cars:

Pursuant to 49 U.S.C. § 20133(a), FRA may apply some or all of the proposed standards to passenger cars existing at the time the regulations are published, as well as to new cars, but FRA must explain the basis for applying any such standards to existing cars. FRA believes that passenger railroad equipment operating in permanent service in the United States has established a good safety record, proving its compatibility with the operating environment. Moreover, FRA seeks to maximize the benefits resulting from the passenger railroad industry's investment in any safety requirements which FRA may impose

through this rule. Accordingly, to be cost effective, most of the proposed requirements would apply only to new or rebuilt equipment. [emphasis added]

*Id.* Where the " 'failure of ... federal officials affirmatively to exercise their full authority takes on the character of a ruling that no such [state] regulation is appropriate or approved pursuant to the policy of the statute,' states are not permitted to use their police power to enact such a regulation." *Missouri Pacific R. Co. v. Railroad Com'n of Texas*, 833 F.2d 570, 573 (5th Cir.1987) (quoting *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 179, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978)). The FRA, in making its "comprehensive" set of regulations, decided that requiring padding for older cars would not be cost effective. The court must therefore conclude that federal law covers the subject matter of passenger car safety on this issue.

Once the question of regulatory coverage is decided, the preemption analysis is straightforward. Since the Secretary's promulgated regulations cover the subject matter, any additional Texas law is preempted. Although 49 U.S.C. § 20106 does allow "additional or more stringent laws and regulations related to railroad safety," it does so only when "necessary to eliminate or reduce an essentially local safety hazard." The locality exception does not apply to state-wide hazards. *Foster*, 205 F.3d at 861. A design defect in the passenger cars must—by its very nature—run everywhere the trains do; the hazard travels with the train and is therefore not local.

### Conclusion

Because federal regulations control the subject matter at issue, Williams's causes of action raised paragraphs 8(e)–8(g) of her Amended Complaint are preempted.

It is therefore ORDERED that they be DISMISSED with prejudice.